Mabel H. **HAILEY**, Personal Representative of the Estate of Alberta Hill, Appellant,

v.

**OTIS ELEVATOR COMPANY**, Appellee.

No. 93–CV–97.

District of Columbia Court of Appeals.

Argued Dec. 9, 1993.

Decided Jan. 24, 1994.

Dalton Howard, for appellant.

Alan R. Siciliano, for appellee.

Before STEADMAN and SCHWELB, Associate Judges, and GALLAGHER, Senior Judge.

STEADMAN, Associate Judge:

Appellant Mabel H. Hailey,[1] personal representative of the estate of Alberta Hill, sued appellee, Otis Elevator Company ("Otis"), for damages for personal injuries suffered by Mrs. Hill in a fall on an escalator which was under a maintenance contract with appellee.[2] Appellant contends that the trial court erred in directing a verdict in favor of Otis at the close of the plaintiff's case. We agree with the trial court that the appellant did not present evidence sufficient to allow the inference of negligence from the use of the doctrine of res·ipsa loquitur. Hence, we affirm.

## I.

The appellant presented Mrs. Hill's testimony that she stepped onto an escalator at a department store and began to move downward with both feet on the step when the escalator seemed to make "a little funny jerk" and she fell forward and landed on her knees against her companion, Mr. Bell, who was in front of her on the escalator. Mrs. Hill testified that "the escalator seemed like, I can't swear to it, seemed like it made a jerk, and I went down." Mr. Bell testified that as he got on the escalator, Mrs. Hill got on behind him and "shortly thereafter, there

---

1. The spelling of Ms. Hailey's name is that used by her counsel on appeal, although the record also uses the spelling "Haley" at times and the case was carried in the trial court as "Haley."

2. Mrs. Hill died of unrelated causes prior to trial. However, her deposition testimony was read to the jury as evidence without objection.

was just a thrust, and Mrs. Hill fell forward." He further described it as "just a thrust, like, for lack of a better word, a malfunction or something that just thrust," and subsequently as a "thrust, like a bump." Mr. Bell recalled that several people were ahead of them on the escalator and "maybe a couple of people behind" but none of those people fell. The evidence presented by appellant also showed that the escalator had been inspected at the beginning of the year and two days after the accident, and was found to be operating properly; indeed, Otis was never called to repair the escalator. At trial, appellant relied upon the doctrine of res ipsa loquitur.

## II.

The doctrine of res ipsa loquitur permits the jury to infer a lack of due care "from the mere occurrence of an accident." *Otis Elevator Co. v. Henderson*, 514 A.2d 784, 785 (D.C.1986) (quoting *McCoy v. Quadrangle Dev. Corp.*, 470 A.2d 1256, 1259 n. 7 (D.C. 1983)); *Quin v. George Washington Univ.*, 407 A.2d 580, 582 (D.C.1979). However, it is a powerful doctrine which "should be applied with caution in a negligence action so that the mere happening of an accident will not permit the inference of a defendant's liability." *Washington Sheraton Corp. v. Keeter*, 239 A.2d 620, 622 (D.C.1968). Res ipsa loquitur may only be invoked where the plaintiff demonstrates that

> (1) [the occurrence is] of the kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the control (exclusive or joint) of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff.

*Otis Elevator Co. v. Tuerr*, 616 A.2d 1254, 1258 (D.C.1992) (quoting *Henderson, supra*, 514 A.2d at 785).

■ "It has been said that 'ordinarily' is the key concept of res ipsa loquitur. At the threshold, plaintiff must demonstrate that the injury ordinarily does not occur when due care is exercised." *Quin, supra*, 407 A.2d at 583 (citations omitted). Thus, it may be invoked only where a layman can infer negligence "as a matter of common knowledge," or where expert testimony is presented that such accidents do not occur in the absence of negligence. *Id.* at 583–84. What is involved, at bottom, is a balance of probabilities, since "[i]t would do violence to the concept to permit a jury to balance possibilities rather than probabilities." *Id.* at 584 (citing *Washington Loan & Trust Co. v. Hickey*, 78 U.S.App.D.C. 59, 61, 137 F.2d 677, 679 (1943)). Given the power of res ipsa loquitur to satisfy without further proof the element of negligence and the consequent caution with which it should be applied, we think that where the plaintiff relies upon "common knowledge" to invoke the doctrine, the fact that such events do not "ordinarily" occur "without negligence" must be based upon a widespread consensus of a common understanding. *See* W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 39, at 244–48 (5th ed. 1984). Such an understanding, for example, may exist where an escalator or elevator exhibits some clearly unusual action or movement, as in the cases to which we are about to turn.[3]

## III.

The trial court granted the motion for directed verdict at the close of the plaintiff's

---

**3.** We do not linger here on the further requirement that the event "must have been caused by an agency or instrumentality within the control (exclusive or joint) of the defendant." *Tuerr, supra*, 616 A.2d at 1258. As Prosser points out, it is not enough to prove that the event ordinarily would not occur without negligence in the abstract; "[e]ven though there is beyond all possible doubt negligence in the air, it is still necessary to bring it home to the defendant." PROSSER, *supra*, at 248. One might logically conclude that the first element of res ipsa loquitur, properly defined, would require that the plaintiff establish that the event would not ordinarily occur without negligence on the part of the named defendant. This concept is what the second element of the doctrine seems to attempt to encapsulate. In the case before us, for instance, there is nothing in the record to show who was the manufacturer of the escalator or the degree to which the department store also exercised control over the escalator. Nonetheless, it appears that our case law does in fact permit a plaintiff to elect to sue only one of several possible negligent defendants. *See Bell v. Westinghouse Elec. Corp.*, 483 A.2d 324, 327–28 (D.C.1984); *Washington Sheraton Corp., supra*, 239 A.2d at 622. In any event, appellee does not challenge the use of res ipsa loquitur on this ground.

evidence because "there is no evidence that this event is something of the kind that ordinarily doesn't occur in the absence of someone's negligence."[4] Appellant argues that she met that burden here, citing several cases which hold that it is permissible to assume that if an escalator is used properly and an injury occurs, there is "something wrong in either the construction, maintenance, or operation of the escalator." *Sanone v. J.C. Penney Co.*, 17 Utah 2d 46, 404 P.2d 248, 250 (1965) (child's foot was caught in the escalator as she rode down); *see also Bell, supra* note 3, 483 A.2d at 329 (woman fell after her sandal was caught in the escalator); *J.C. Penney Co. v. Livingston*, 271 S.W.2d 906, 908 (Ky.1954) (small boy's hand was caught in an escalator). However, these cases are inapposite. In all of these cases the plaintiffs were caught in the escalator mechanism.

■ The harmful mechanism cases present a different problem of proof from cases which involve injury from the actual movement of a conveyance. The fact of movement with its permissible vagaries is inherent in a mechanism which must be in motion to achieve its purpose. While it may be common knowledge that escalator mechanisms do not catch the feet or hands of riders unless someone is negligent, we fail to see how it can be said to be common knowledge that moving escalators do not normally act in the manner described here, that is, with a "little funny jerk," a "thrust," or a "bump," much less that such motions are "ordinarily" the result of negligence. For this reason, we find more applicable and persuasive the reasoning of cases which at least require proof that the motion was unusual in nature before res ipsa loquitur will be applied. *See Dombrowska v. Kresge–Newark, Inc.*, 75 N.J.Super. 271, 183 A.2d 111, 113 (App.Div.1962) (not applying the doctrine without some evidence that "jerk" of escalator was unusual); *Arbuckle v. Stewart Dry Goods Co.*, 291

S.W.2d 525, 526 (Ky.1956) (doctrine not applicable where no evidence that escalator "jerk" was an unusual happening).[5]

■ We recognize that in reviewing a directed verdict, we are to view the evidence in the light most favorable to the non-movant, including all reasonable inferences therefrom. *Corley v. BP Oil Corp.*, 402 A.2d 1258, 1263 (D.C.1979). However, if a clear distinction is to be preserved between res ipsa loquitur and strict liability, the elements of res ipsa loquitur must be established with some precision; it will not do to invoke inferences to establish the elements of res ipsa loquitur, so that a further inference of unproven negligence can be invoked. Although res ipsa loquitur asks the jury to consider a question of fact on which little evidence has been presented, that does not permit them to "balance possibilities rather than probabilities." *Quin, supra,* 407 A.2d at 584.

■ Here, the jury would have been speculating on possibilities rather than weighing probabilities based on the evidence. No expert was called to testify that escalators do not act in the manner described without some negligence in their maintenance. Moreover, we are unable to discern in the record sufficient evidence that the escalator exhibited a severe or unusual motion; it was variously described simply as a "thrust," a "bump," or a "little funny jerk." The other shoppers on the escalator were not thrown off balance by the movement. In summary, the evidence did not suffice to show that the event was one that would not ordinarily occur without someone's negligence. Therefore, the first element of res ipsa loquitur was not met and the trial court correctly granted the motion for a directed verdict in favor of Otis.

*Affirmed.*

*Washington Sheraton Corp., supra,* 239 A.2d at 621–22. We have not been cited to nor have we found any case in which recovery for a moving escalator mishap has been granted in the absence of a showing of the unusual nature of the movement.

4. Appellant's brief suggests that the trial judge granted the directed verdict because specific negligence was not proven. This is not the case.

5. Likewise an escalator which is turned off does not suddenly lurch forward while someone is walking down unless negligence is involved.