Trinetta C. BRADSHAW, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 07–CV–274.

District of Columbia Court of Appeals.

Argued Oct. 5, 2011.

Decided May 10, 2012.

Lisa Alexis Jones, Washington, for appellant.

Andrew Brisker, Assistant Attorney General, with whom Peter J. Nickles, Attorney General for the District of Columbia at the time the brief was filed, Todd S. Kim, Solicitor General, and Donna M. Murasky, Deputy Solicitor General, were on the brief, for appellee.

Before THOMPSON,* Associate Judge, RUIZ, Associate Judge, Retired, and NEBEKER, Senior Judge.

THOMPSON, Associate Judge:

Metropolitan Police Department ("MPD") Officer Milan Jones arrested appellant Trinetta Bradshaw at a club in the early morning hours of October 24, 2004.[1]

---

* Judge Kramer was originally assigned to this case. Following her retirement on May 1, 2011, Judge Thompson was assigned to take her place on the division.

1. Bradshaw was charged with assault on a police officer ("APO"), a charge based on Officer Jones's claim that Bradshaw struck him in the face when he stopped her from re-entering the club, and with simple assault of

Thereafter, Bradshaw filed this civil suit against the District of Columbia and Officer Jones,[2] alleging false arrest and imprisonment and a deprivation of liberty in violation of her constitutional rights (as to which she asserted a claim under 42 U.S.C. § 1983).[3] After hearing arguments by counsel, the trial court granted summary judgment in favor of defendants/appellees the District of Columbia ("the District") and Jones. This appeal followed. On June 16, 2010, we issued a Memorandum Opinion and Judgment reversing the trial court's ruling, but subsequently, in an order dated July 28, 2011, we granted the District's petition for rehearing and vacated the Memorandum Opinion and Judgment. Having heard oral argument on October 5, 2011, we now, once again, reverse and remand for the reasons discussed below.[4]

## I. Background

In ruling on the motion for summary judgment, the trial court had before it the deposition testimony of both Officer Jones and Bradshaw, as well as a portion of the transcripts of Officer Jones's and Bradshaw's testimony from Bradshaw's criminal trial (see note 1, *supra*). Officer Jones testified in his deposition that at around 2:00 a.m. on October 24, 2004, during the course of his midnight to 8 a.m. shift, he went to Club H2O to speak with another MPD officer on a personal matter. Jones had worked overtime providing security at the club on a number of occasions and knew several people at the club. According to Jones, while he was standing in the hallway of the club just outside the dance floor area, one of the club's bouncers approached him and "advised ... that he had a female that was refusing to leave the club." Jones testified that, to the best of his recollection, the bouncer's exact words were "that he had a female that needed to be removed from the club." He further testified that the bouncer had the woman (Bradshaw) by the arm, escorting her out, and that he (Jones) put his arm out to stop her and grabbed her by the arm "when she tried to walk past me and go back in the club," i.e., "back into the location that she was just escorted from." Jones testified that he had "no idea" whether, prior to telling Jones that Bradshaw needed to leave, the bouncer had asked her to leave. When asked specifically whether the bouncer said "that he had asked [Bradshaw] to leave and she had refused to leave," Jones responded, "Not that I'm aware of." In addition, Jones agreed that he could not "extrapolate" from the bouncer's statement that the bouncer had asked Bradshaw to leave. In response to a question about whether he had asked the bouncer why Bradshaw "needed to be removed," Jones stated, "Well, he implied

---

2. The trial court permitted Bradshaw to amend her complaint to add Officer Jones as

one Officer Penlan, who claimed that Bradshaw spit on him as he attempted to restrain her in his police vehicle after her arrest. After a bench trial, Bradshaw was convicted of simple assault, but acquitted of APO, with the trial judge observing that "[n]o reasonable fact-finder could fail to have a doubt" that (as Officer Jones claimed) Bradshaw "hauled off and slugged" Jones. The trial judge clarified, however, that he was "not saying I find that the officer was wrong in carrying [Bradshaw] out of the club."

a defendant just before ruling, in favor of both defendants, on the District of Columbia's motion for summary judgment.

3. Bradshaw initially filed other claims, but she does not pursue those on appeal.

4. In the petition for rehearing, the District pointed out that the previous Memorandum Opinion and Judgment implied that Bradshaw had brought an excessive force claim. We agree that Bradshaw never presented an excessive force claim and, accordingly, this opinion contains no reference to such a claim.

that, you know, she had been drinking too much and was attempting to fight another female."

In follow-up questioning, Bradshaw's counsel said to Jones, "You testified that [the bouncer] in addition to saying that she needed to leave, he told you that she had been attempting to fight another woman and had been drinking too much?" Jones replied, "Correct."[5] Jones further testified that Bradshaw had "[a]n odor emanating from [her] breath consistent with several alcoholic beverages" and that "[h]er eyes were glazed over" and "she was speaking sluggish or slurrish," but acknowledged that he "had not observed" those things, and had not spoken with her, before he stopped her. Jones agreed that the "basis of . . . [his] physical detention of [Bradshaw] was the bouncer's information to [him] that she had been . . . attempting to fight another woman and . . . had been drinking too much . . . and . . . needed to leave." Jones also acknowledged his testimony during Bradshaw's criminal trial that he was "only going by what the bouncer said that she needed to leave the club . . . I am going by the bouncer's motion that he said she needs to leave the club so we were escorting her out of the club[.]"[6] Finally, Jones testified that after he grabbed Bradshaw's arm to stop her from re-entering the club, she struck him in the mouth and an "altercation on the floor occurred."

In his testimony at Bradshaw's criminal trial, Officer Jones testified that the club bouncers who flagged him down "advised that [Bradshaw] was asked to leave at which time she refused." He testified that he stopped Bradshaw when, even though "[s]he was already ordered to leave," she attempted to walk past him "to gain further entry into the club." Jones similarly testified that "[t]hey just said she need [sic] to leave, and she is refusing," and that Bradshaw "refused to leave the establishment after she was told to leave." Officer Jones later described the bouncer's statement to him as, "Officer, can you stop her, she's—she needs to get out of the club."

In her deposition, Bradshaw gave a quite different account of what transpired at Club H2O on October 24, 2004. Bradshaw testified that she "was starting to leave" the club and was in the hallway leading outside, when, distracted by a man who was attempting to talk to her, she accidentally stepped on the bouncer's foot with the heel of her high-heeled shoes. She then stopped in the hallway to talk with the man, but saw the bouncer pointing at her. She told the man, "Okay, I got to go," and then turned to leave the crowded club, but "wound up on the ground" after someone (Officer Jones, Bradshaw contends) pulled the back of her shirt." When Bradshaw looked up, she saw Officer Jones, who "dragged [Bradshaw] off the ground and pulled [her] out of the club" and told her that she was under arrest but did not indicate why. Jones testified that the bouncer, whose identity she still did not know at the time of her deposition, did not say anything to her.

5. During Jones's deposition in this civil matter, Bradshaw's counsel asked him whether he would be surprised to know that during the two days of his testimony at Bradshaw's criminal trial, "you never testified that the bouncer told you that she had been fighting or attempting to fight another person in the club[.]" Jones responded, "Nothing surprises me." He later added that, "They tend to only escort the people out who are intoxicated or can't stand or are belligerent after they have been drinking, not everybody."

6. During his deposition testimony, Jones also confirmed that, in the PD–163 arrest report that he completed on the day of the incident, he wrote that Bradshaw was "very belligerent, combative, and was asked to leave."

When asked whether she knew or had an idea "as to why Officer Jones would have pushed you," Bradshaw responded, "Because the bouncer was pointing at me and telling them, I guess, telling me to leave, remove me, trying to get my attention probably, too." Bradshaw denied that the bouncer escorted her from inside the club out into the hallway, and she testified that she did not hear the bouncer tell the police officer that she had to leave. She acknowledged, however, that the bouncer "was wearing his ear piece, talking" and that she saw him pointing at her. Bradshaw gave similar testimony during her criminal trial, explaining that she was "on her way to leave anyway," both at the time she stepped on the bouncer's foot and when she came into contact with Officer Jones.

In granting summary judgment in favor of the defendants, the trial court reasoned as follows:

> The court finds that there is no constitutional violation as a result of the actions taken by Officer Jones that would go to a false arrest. Even if the court looks at the evidence in the light most favorable to the plaintiff, the court is required to look at testimony of Officer Jones in terms of what information he had, which would have constituted probable cause for arrest. In this particular case, the testimony of Officer Jones is that he received, and although it is somewhat inconsistent, the testimony is that he received information from the bouncer that Ms. [Bradshaw] was required to leave the premises, and that once that information is obtained by him, he has legal authority to escort Ms. Bradshaw out of the club.

The court granted summary judgment as to Bradshaw's § 1983 claims, her false arrest/false imprisonment claims,[7] and her claim of negligent training and supervision (a claim that Bradshaw has not pursued in this appeal).

## II. The Parties' Arguments on Appeal

The gravamen of Bradshaw's complaint is that Officer Jones restrained, detained, and arrested her without a basis for believing that she had committed a crime or was a danger to him or others. In challenging the trial court's dismissal of her § 1983 claims and false imprisonment claims, Bradshaw argues that "Officer Jones did not possess probable cause to arrest Ms. Bradshaw for trespass or unlawful entry given the utter lack of evidence that Ms. Bradshaw had been asked to leave by someone with the lawful authority to so ask and that she had refused to leave upon that request."

Although the District sought summary judgment on the ground that Officer Jones had probable cause to arrest Bradshaw for disorderly conduct and for assaulting Officer Jones and Officer Penlan, its argument on appeal is different. The District's brief does not argue that Officer Jones (as the trial court's ruling implied) was justified in arresting Bradshaw merely upon hearing from the bouncer that Bradshaw was required to leave the premises. The District argues instead that we can uphold the grant of summary judgment on the ground that Officer Jones was given reasonably trustworthy information, from the bouncer, that Bradshaw had committed an offense warranting arrest—specifically, that Bradshaw "was attempting to fight with another club patron." The District asserts that

---

7. " 'False arrest' is indistinguishable as a practical matter from the common law tort of 'false imprisonment.' ... The gravamen of a complaint for false arrest or false imprison-ment is an unlawful detention." *Enders v. District of Columbia,* 4 A.3d 457, 461 (D.C. 2010).

this information from the bouncer gave Officer Jones probable cause to arrest Bradshaw, without a warrant, for attempted assault, pursuant to D.C.Code §§ 22–404, and 23–581(a)(1)(C) & (a)(2)(A) (authorizing arrest without a warrant where an officer has probable cause to believe a person has committed assault and "unless immediately arrested, may not be apprehended or may cause injury to others, or may tamper with, dispose of, or destroy evidence"). In its petition for rehearing, the District reiterates that summary judgment in favor of the defendants was proper because "there is no genuine dispute" in the record that "a bouncer told Officer Jones that Bradshaw had fought with another patron and had to leave the club."

### III. Standard of Review and Applicable Law

■ "Summary judgment is appropriate only when there are no material facts in issue and when it is clear that the moving party is entitled to judgment as a matter of law." *Jones v. Thompson*, 953 A.2d 1121, 1124 (D.C.2008) (citation and internal quotation marks omitted). "Whether summary judgment was properly granted is a question of law, and our review is therefore de novo." *Id.* (citation and internal quotation marks omitted). "If a moving defendant has made an initial showing that the record presents no genuine issue of material fact, then the burden shifts to the plaintiff to show that such an issue exists." *Beard v. Goodyear Tire & Rubber Co.*, 587 A.2d 195, 198 (D.C.1991) (citations omitted). The non-moving party cannot meet that burden and avoid summary judgment "merely by impugning [the] honesty" of the moving party's witness. *McCullough v. Wyandanch Union Free Sch. Dist.*, 187 F.3d 272, 280 (2d Cir.1999); *see also Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir.2008) (explaining that when an argument in opposition to

a motion for summary judgment "boils down to an allegation that defense witnesses are lying and the stated reasons for [their] actions are phony" and "when challenges to witness' credibility are all that a plaintiff relies on, and he has shown no independent facts—no proof—to support his claims, summary judgment in favor of the defendant is proper.") (citing *Dugan v. Smerwick Sewerage Co.*, 142 F.3d 398, 406 (7th Cir.1998)) ("[T]he prospect of challenging a witness' credibility is not alone enough to avoid summary judgment.").

■ "In actions for false arrest and false imprisonment, the central issue is whether the arresting officer was justified in ordering the arrest of the plaintiff; if so, the conduct of the arresting officer is privileged and the action fails." *Scott v. District of Columbia*, 493 A.2d 319, 321 (D.C.1985) (citation and internal quotation marks omitted). We have also recognized that because "[t]he elements of a constitutional claim for false arrest are substantially identical to the elements of a common-law false arrest claim, ... the constitutional claim cannot stand if the common law claim fails for lack of sufficient evidence." *Weishapl v. Sowers*, 771 A.2d 1014, 1023 (D.C.2001) (citations and internal quotation marks omitted).

■ "A police officer may justify an arrest by showing that he or she had probable cause, in the constitutional sense, to make the arrest." *District of Columbia v. Murphy*, 631 A.2d 34, 36 (D.C.1993) ("*Murphy I*"). However, the police officer "need not demonstrate probable cause in the constitutional sense. Rather, it will suffice if the officer can demonstrate that (1) he or she believed, in good faith, that his [or her] conduct was lawful, and (2) this belief was reasonable." *Id.* (citation and internal quotation marks omitted); *see also Minch v. District of Columbia*, 952 A.2d 929, 937 (D.C.2008) ("The Metropoli-

tan Police Department is immune from claims for both false arrest and false imprisonment if it can affirmatively demonstrate either that probable cause existed to arrest or that the arresting officer believed, reasonably and in good faith, that probable cause existed."); *Enders,* 4 A.3d at 470–71 ("[T]he relevant inquiry in a false arrest defense is not what the actual facts may be but rather what the officers could reasonably conclude from what they were told and what they saw on the scene") (citations omitted). "The issue of probable cause in a false arrest case is a mixed question of law and fact that the trial court should ordinarily leave to the jury." *Id.* at 469; *see also id.* at 471 (explaining that "since the facts necessary to a finding of probable cause were in dispute, the court did not err in leaving the resolution of that factual dispute to the jury") (citation and internal quotation marks omitted). "It is only where the facts are undisputed or clearly established that probable cause becomes a question of law for the court." *Id.* at 469 (citations omitted). "Judgment as a matter of law cannot be granted unless the evidence is so clear that reasonable men could reach but one conclusion." *Id.* (citation and internal quotation marks omitted).

▮▮▮▮ "An officer has probable cause to arrest an individual when he or she has reasonably trustworthy information at the moment of arrest sufficient to warrant a reasonably prudent [person] in believing that the [suspect has] committed or [is] committing an offense." *Funchess v. United States,* 677 A.2d 1019, 1020–21 (D.C.1996). "[P]robable cause may be based on an informant's tip if the totality-of-the-circumstances provides reason to believe that the tip is sufficiently reliable to justify the arrest." *District of Columbia v. Minor,* 740 A.2d 523, 529 (D.C.1999) (citation and internal quotation marks omitted). "[I]n defending against a claim of false arrest, the District can prevail if it can show that probable cause existed to arrest for any offense, even if it differs from the offense for which the arrest was actually made[.]" *Enders,* 4 A.3d at 469.[8]

▮▮▮▮ "In evaluating an officer's claim that he or she acted in good faith in making an arrest, the trier of fact must consider the [information that was available to the officer] from the perspective of the arresting officer, not of the plaintiff." *Murphy,* 631 A.2d at 36–37 & 37 n. 4. In conducting our *de novo* review of a grant of summary judgment to the arresting officer, we likewise must consider that evidence from the officer's perspective. At the same time, "we must view the record in the light most favorable to the non-moving party." *Jones,* 953 A.2d at 1124. This means that we must "resolve all inferences in favor of the non-moving party." *Crawford v. Katz,* 32 A.3d 418, 427 (D.C. 2011) (citations omitted). Accordingly, the question we must answer here is whether, considering the undisputed facts in the light most favorable to Bradshaw, we can say as a matter of law that Officer Jones had probable cause to arrest her, or at least a reasonable, good faith belief that he was acting lawfully in doing so. *See Murphy,* 631 A.2d at 37.

## IV. Analysis

▮▮▮▮ In large part, Bradshaw premises her argument that summary judgment was

---

**8.** *Cf. Payne v. United States,* 294 F.2d 723, 725 (D.C.Cir.1961) ("Whether the officers went through this legal reasoning before beginning their pursuit is of course immaterial."); *Bell v. United States,* 254 F.2d 82, 86 (D.C.Cir. 1958) ("The question is not what name the officer attached to his action; it is whether, in the situation in which he found himself, he had reasonable ground to believe a felony had been committed and that the men in the car had committed it.").

unwarranted on a claim that Officer Jones's testimony about what transpired in the club was not credible.[9] Referring to what she calls Jones's "outright falsehoods" and "tortured and elegantly untruthful sworn testimony," Bradshaw argues that the trial court "erred in crediting Officer Jones's blatant efforts to embellish and enhance his [criminal] trial account and thus finding that there existed no factual issue for the jury to resolve." The District is correct that such assertions were not a sufficient basis for Bradshaw to avoid summary judgment, and are not a basis for disturbing the court's summary judgment ruling. Cf. *Schoonejongen v. Curtiss-Wright Corp.*, 143 F.3d 120, 130 (3d Cir.1998) ("[I]t is by now axiomatic that a nonmoving party ... cannot defeat summary judgment simply by asserting that a jury might disbelieve an opponent's [sworn statement].") (citation and internal quotation marks omitted); *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir.2005) ("Broad, conclusory attacks on the credibility of a witness will not, by themselves, present questions of material fact" for trial, defeating summary judgment.).

 We nevertheless agree with Bradshaw that the District was not entitled to summary judgment. The District argues that summary judgment was proper because Officer Jones received a "reasonably trustworthy" report from the bouncer that Bradshaw had attempted to fight with another patron, thereby committing attempted assault.[10] Bradshaw does not dispute (and indeed her testimony about the bouncer speaking while pointing at her at least partially corroborates) Officer Jones's claim that the bouncer spoke to him about her. And, for present purposes, we can

---

**9.** Bradshaw devotes a significant portion of her brief to explaining why Officer Jones's account should not be believed. She suggests, *inter alia*, that the officer had a questionable basis for his presence at the club in the middle of his work shift elsewhere; she points out that he was suspended by the MPD for a 60–day period without pay after a speeding conviction and also faced other MPD disciplinary actions; and she notes that the trial judge in the criminal matter found that Jones was "mistaken in his testimony, exaggerated, or just told some untruths."

**10.** We note that the District—quite understandably—does not argue that summary judgment was proper on the ground that Officer Jones had probable cause to arrest Bradshaw for unlawful entry. "The offense of unlawful entry includes not only cases where a person enters property without lawful authority, but also cases where a person who has entered the premises with permission subsequently refuses to leave after being asked to do so by someone lawfully in charge." *Murphy*, 631 A.2d at 37. There is no suggestion in the record that Bradshaw's initial entry into the club was unlawful, and the record testimony does not establish whether Bradshaw, at some time before Jones encountered her, had refused to leave the club after a bouncer or someone else with authority asked her to leave.

As described above, in his testimony at the criminal trial, Officer Jones did say that the club bouncers told him that Bradshaw "was asked to leave at which time she refused." But, in his deposition testimony, Jones testified that he was not "aware" of the bouncer having said that Bradshaw had refused to leave after being asked to do so, and he acknowledged that he could not "extrapolate" that the bouncer had asked Bradshaw to leave. And, although Jones testified that he saw Bradshaw attempt to walk past him in an effort "to gain further entry into the club" after the bouncer had led her out, Bradshaw disputed that account, denying that she had been escorted out of the club, and insisting that she was trying to leave rather than attempting to gain re-entry.

The District does assert that Officer Jones "may have also had probable cause" to arrest Bradshaw for disorderly conduct or public intoxication. By the tentative nature of that assertion, the District appears to concede that these defenses raise factual questions that could not have been resolved on summary judgment.

assume without deciding that whatever information the bouncer relayed to Officer Jones was reasonably trustworthy. On the present record, however, we cannot say that a reasonable jury "could reach but one conclusion"[11] about whether the club bouncer told Officer Jones that Bradshaw had attempted to fight with another patron. To reiterate, in the officer's testimony during the criminal trial, he did not mention anything about the bouncer having reported that Bradshaw had attempted to fight another patron. In the written arrest report he completed on the day of the incident, he wrote that Bradshaw was "very belligerent," but he did not explain whether this was a reference to Bradshaw's reported behavior before the bouncer spoke with Officer Jones or, perhaps instead, a reference to the "physical altercation" that occurred after Jones arrested Bradshaw. During the first portion of his deposition in this civil case, Officer Jones testified that the bouncer told him that "he had a female that was refusing to leave the club." His "best ... recollection" as to what precisely the bouncer said was that Bradshaw "needed to be removed" from the club. Jones then explained that the bouncer "*implied* that, you know, she had been drinking too much and was attempting to fight another female" (italics added).

Thereafter, Officer Jones merely agreed with questions posed to him about what the bouncer had "told" or "inform[ed]" him: "You testified that [the bouncer] in addition to saying that she needed to leave, he told you that she had been attempting to fight another woman and had been drinking too much?" Jones replied, "Correct." "So, the basis of your stop, your physical detention of her was the bouncer's information ... that she had been ... attempting to fight another woman and ... had been drinking too much ... and ... needed to leave." Jones answered, "Yes." Later, Jones acknowledged that he had testified during the criminal trial that he was "only going by what the bouncer said that she needed to leave the club.... I am going by the bouncer's *motion* that he said she needs to leave the club so we were escorting her out of the club" (italics added).

Resolving all inferences from the testimony in favor of Bradshaw as the non-moving party, we think that, taken as a whole, Officer Jones's testimony "could reasonably be understood to mean" that the bouncer never actually told the officer that Bradshaw was attempting to fight another patron. *District of Columbia v. Murphy*, 635 A.2d 929, 932 (D.C.1993) ("*Murphy II* "). Officer Jones may simply have inferred this;[12] we note his testimony that the bouncers "*tend* to only escort the people out who are intoxicated or can't stand or are belligerent after they have been drinking, not everybody" (italics added). In any event, Officer Jones's testimony does not "clearly establish[ ]" what he was told at the scene.[13] Accordingly, we cannot agree with the District that "there is no genuine dispute" in the record that "a

11. *Enders*, 4 A.3d at 469.

12. Perhaps this is why, in its motion for summary judgment, the District did not rely at all on the bouncer's purported statement that Bradshaw had been attempting to fight another patron. The District's motion relied almost exclusively on facts that occurred after Bradshaw's arrest, including her alleged assault on Officer Jones and her spitting on Officer Penlan once she was already in the police vehicle. The District also omitted, from its Statement of Material Facts As to Which There Is No Genuine Issue, any reference to the bouncer having told Jones that Bradshaw had attempted to fight another patron.

13. *Enders*, 4 A.3d at 469.

bouncer told Officer Jones that Bradshaw had fought with another patron and had to leave the club." We cannot say as a matter of law either that the bouncer's communication gave Officer Jones probable cause to believe that Bradshaw had committed an arrestable offense, or that the inference (if that is what it was) that Officer Jones drew from the bouncer's statement or "motion"—the inference that Bradshaw had tried to fight another patron—was a reasonable one.[14]

To be clear, we do not hold that summary judgment was improper because there may be questions about the credibility of Officer Jones's testimony. If the officer's testimony regarding what the bouncer told him about Bradshaw's fighting had been definitive and consistent, the testimony—which described a conversation about which Bradshaw claims no personal knowledge—could have supplied a basis for summary judgment, notwithstanding Bradshaw's attack on the officer's integrity. In other words, echoing what we said in *Murphy I*, "because [Bradshaw] testified that [she] had not heard the conversation between [the bouncer] and the police officer[,] ... [Officer Jones's testimony] would have supplied undisputed evidence requiring a conclusion, as a matter of law, that the officer[ ] had a reasonable, good faith belief in the lawfulness of the arrest." *Murphy*, 631 A.2d at 38. In that circumstance, Bradshaw could have defeated summary judgment only if she had affirmative evidence to the contrary—e.g., deposition testimony or a sworn statement from the bouncer that was at odds with Jones's account—something she had not obtained by the close of discovery in this case. By contrast, on the record before

us, Bradshaw avoids summary judgment because Officer Jones's testimony, even if assumed to be fully truthful, does not definitively establish that he received information that Bradshaw had attempted to assault another club patron (or that she had committed any other offense for which she was subject to arrest).

To summarize, we cannot agree that the District was entitled to summary judgment on the ground that the communication between the bouncer and Officer Jones gave the officer probable cause to arrest Bradshaw, or gave him a basis for a reasonable belief that he could lawfully arrest her. What the bouncer told Officer Jones, and whether that communication enabled him reasonably to believe that Bradshaw committed an offense, are matters for a jury. Wherefore, the judgment of the trial court is

*Reversed and the matter remanded.*

---

14. *Cf. Mazloum v. District of Columbia Metro. Police Dep't*, 576 F.Supp.2d 25, 34–35 (D.D.C. 2008) ("The jury, then, might reasonably have decided that—given the facts known to the officers at the time (as construed by the jury)—the officers could not have credibly determined that Mazloum [who had been pinned to the floor by a club bouncer] had committed or was about to commit a crime.").