*Notice:* *This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 18-CV-1299 & 18-CV-1386

DENISE MCKENNEY and KAMILAH WOODS, APPELLANTS,

v.

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, APPELLEE.

Appeals from the Superior Court
of the District of Columbia
(2018-CA-000473-B & 2018-CA-000474-B)

(Hon. Florence Y. Pan, Trial Judge)

(Argued February 05, 2020     Decided July 18, 2024)

*Erik J. Williams* for appellant.

*Andrew Butz*, Associate General Counsel for the District of Columbia, with whom *Barry D. Trebach*, General Counsel for the District of Columbia, *Sarah E. Allison*, and *Sean C. O'Hara*, Associate General Counsels, were on the brief, for appellee.

Before EASTERLY, *Associate Judge*, and RUIZ and FISHER,[*] *Senior Judges*.

RUIZ, *Senior Judge*: Appellants, Denise McKenney and Kamilah Woods,

appeal the Superior Court's grant of summary judgment in their negligence suit

---

[*] Judge Fisher was an Associate Judge of the court at the time of argument. His status changed to Senior Judge on August 23, 2020.

against the Washington Metropolitan Area Transit Authority ("WMATA"). We affirm.

## I. Background

Appellant Denise McKenney entered the Metrorail system at Foggy Bottom Station and boarded Metro railcar number 6090, traveling in the direction of Largo Station. Ms. McKenney took a seat towards the rear of the car. Her seat was forward-facing and located near one of the doors on the right-hand side of the car. The seat was bench-style, without arms or handles. Several stops later at the Smithsonian Station, appellant Kamilah Woods also boarded railcar 6090 and sat down next to Ms. McKenney on the same seat. As the train departed and proceeded towards Benning Road Station, appellants' seat detached from the railcar wall and fell to the floor, bringing appellants tumbling down with it.

Appellants filed suit against WMATA on January 20, 2018, alleging they suffered personal injuries when their seat in a Metro railcar collapsed. During discovery, WMATA produced inspection records for railcar 6090, as well as an affidavit from James Poe, WMATA's Assistant General Superintendent of Railcar Maintenance ("Poe Declaration"). Mr. Poe explained that he had "reviewed the maintenance records for car 6090 for the 6 months prior to January 21, 2015 . . . [and] found no malfunctions or defects in the . . . seats and anchoring systems for

the seats." He also described WMATA's railcar inspection protocols, explaining the interior of each railcar, including the seats, is inspected before Rail Operations Supervisors release each train into service. He also noted that railcars are "inspected, tested, and if necessary, serviced every 30 days." Appellants produced pictures of the collapsed seat along with declarations from Ms. McKenney and Ms. Woods describing the incident.

Following discovery, WMATA filed a motion for summary judgment asserting that, without expert testimony, appellants could not make a prima facie case of negligent maintenance, or show that WMATA had prior notice of a malfunction or defect with the railcar seat. Appellants opposed the motion, arguing that omissions in the Poe Declaration, as well as photographs of and deposition testimony describing the damaged seat, were sufficient to establish a genuine issue of material fact on the issue of WMATA's notice that obviated the need for expert testimony.

The trial court granted WMATA's motion for summary judgment, concluding appellants' negligence claim must fail because they did not present any evidence demonstrating WMATA had actual or constructive notice of a defective condition in the railcar seat on which appellants sat. The trial court also rejected appellants' claim that they did not need expert testimony to establish the applicable standard of

care for maintaining Metro railcar seats to support a negligence claim. Finally, the trial court rejected appellants' argument that the doctrine of *res ipsa loquitur* obviated the need for expert testimony, explaining the doctrine was inapplicable on the facts of this case. These appeals followed.

## II. Standard of Review

"Summary judgment is properly granted when the pleadings and other materials on file demonstrate that there is no genuine issue of material fact to be resolved at trial." *Mixon v. Wash. Metro. Area Transit Auth.*, 959 A.2d 55, 57 (D.C. 2008). "The moving party has the initial burden of demonstrating that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law." *Tolu v. Ayodeji*, 945 A.2d 596, 600 (D.C. 2008). Once the moving party meets its burden, such as by showing an absence of evidence supporting the non-moving party's claim, the burden shifts to the non-moving party "to present evidence showing the existence of genuine issues of material fact." *Id.* In order to prevail, the "non-moving party may not rest upon conclusory allegations or denials, but must provide affidavits, depositions, or answers to interrogatories that 'set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Super. Ct. Civ. R. 56(e)).

"On appeal, this court reviews summary judgment de novo, conducting an independent review of the record and applying the same substantive standard used by the trial court." *Id.* at 601 (quoting *Murphy v. Schwankhaus*, 924 A.2d 988, 991 (D.C. 2007)). Therefore, "[w]e determine the existence of any genuine issue of material fact by reviewing the pleadings, depositions, admissions and affidavits on file," and "view the record in the light most favorable to the non-moving party." *Id.* This means that "the party opposing summary judgment 'is entitled to all favorable inferences which may be reasonably drawn from the evidentiary materials.'" *Id.* (quoting *Beard v. Goodyear Tire & Rubber Co.*, 587 A.2d 195, 198 (D.C. 1991)).

### III. Analysis

Appellants contend the trial court erred in granting summary judgment in favor of WMATA because a genuine issue of material fact existed for jury resolution as to whether WMATA had notice of appellants' defective railcar seat on the day the seat collapsed. Appellants also challenge the trial court's determination that expert testimony was required to establish the applicable standard of care in this case, arguing they can prove WMATA's negligence both directly and by a theory of *res ipsa loquitur* causation.

"The elements of a cause of action for negligence are a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, and damage to

the interests of the plaintiff, proximately caused by the breach." *Mixon*, 959 A.2d at 58 (internal quotation marks omitted). "To create a jury question in a negligence case, the plaintiff must produce evidence from which a reasonable juror may conclude that a certain hazard caused the injury *and* that the defendant had actual or constructive notice of that hazard." *Marinopoliski v. Irish*, 445 A.2d 339, 340 (D.C. 1982) (emphasis in original). "[T]o prove constructive notice, then, a plaintiff must present evidence: (1) that a dangerous condition existed . . . and (2) that the dangerous condition existed for such a duration of time that [the defendant] would have been aware of it if [the defendant] had exercised reasonable care." *Lynn v. District of Columbia*, 734 A.2d 168, 171 (D.C. 1999) (internal citations omitted); *see also Rajabi v. Potomac Elec. Power Co.*, 650 A.2d 1319, 1322 (D.C. 1994) (defendants "must have had actual or constructive notice of [a hazardous condition] before they could be held liable"). The trial court in this case correctly concluded that on this record appellants could not meet this two-part burden.

**A. Notice**

Our review of the record compels us to agree with the trial court's determination that appellants failed to produce sufficient evidence to raise a genuine issue of fact as to whether WMATA had actual or constructive notice of any defect with the railcar seat on which appellants were seated. Although appellants contend

WMATA had constructive notice of the seat defect in railcar 6090 because "seats break periodically" on Metro railcars, appellants did not offer evidence sufficient to establish a genuine issue of material fact on this point. Appellants assert that the maintenance records produced by WMATA are evidence of "WMATA's awareness of problems involving Metrorail car seats," but these records pertain only to railcar 6090, and make no reference to any damaged seats in that railcar. Thus, appellants' mere assertion that "seats break periodically" on Metro railcars — a claim unsupported by any evidence in the record — is insufficient to establish a genuine issue of material fact as to whether WMATA had constructive notice of a defect in the railcar seat at issue here. *See Tolu*, 945 A.2d at 600 (explaining the "non-moving party may not rest upon conclusory allegations or denials, but must provide affidavits, depositions, or answers to interrogatories that set forth specific facts showing that there is a genuine issue for trial" (internal quotation marks omitted)).

In an effort to avoid summary judgment, appellants point to alleged omissions in the Poe Declaration as evidence of disputed issues of material fact regarding WMATA's maintenance of its railcar seats. Specifically, they argue that because the Poe Declaration conspicuously omitted "any detailed description of exactly what [WMATA's] inspection entailed," it necessarily raised a genuine issue of material fact. But appellants' reliance on the Poe Declaration's purported failure to offer a more detailed description of WMATA's railcar seat inspection protocols is not

sufficient to defeat summary judgment. Had this case gone to the jury on this record, the jury would have been left with no choice but to "engage in idle speculation" to determine whether WMATA had notice of the defective railcar seat. *Marinopoliski*, 445 A.2d at 341 (while "we recognize that an issue such as constructive notice is peculiarly within the province of the jury . . . juries cannot be permitted to engage in idle speculation" (citation omitted)). Rather, it was appellants' burden to present affirmative evidence that WMATA had notice that this seat or its mounting was defective—a burden appellants have failed to meet.[1] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986) (explaining "the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment . . . even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff had a full opportunity to conduct discovery.") Therefore, we

---

[1] Nor can the non-moving party meet its burden to show that a genuine issue of material fact exists by "impugning the honesty of the moving party's witness." *Bradshaw v. District of Columbia*, 43 A.3d 318, 323 (D.C. 2012) (brackets and internal quotation marks omitted). To avoid summary judgment by challenging the veracity of a witness, the non-moving party must point to some independent evidence in support of its claim. *Perkins v. District of Columbia*, 146 A.3d 80, 86-87 (D.C. 2016) (finding appellant's argument that the record cast doubt on the veracity of appellee's witnesses insufficient to avoid summary judgment where appellant cited no independent evidence supporting their claim. (citing *Bradshaw*, 43 A.3d at 323 and "explaining that when an argument in opposition to a motion for summary judgment boils down to an allegation that defense witnesses are lying and when challenges to witness' credibility are all that a plaintiff relies on, and he has shown no independent facts — no proof — to support his claims, summary judgment in favor of the defendant is proper" (internal quotation marks omitted))).

cannot say the trial court erred in granting summary judgment for appellee on the issue of whether WMATA had notice of the defective seat in railcar 6090 prior to its collapse.

## B. Expert Testimony and the Standard of Care

Appellants contend that the trial court erred in requiring the presentation of expert testimony to establish the applicable standard of care on the ground that the subject matter at issue here, the maintenance of seats in a Metro railcar, is "beyond the ken of the average lay" person. *District of Columbia v. Davis*, 386 A.2d 1195, 1200 (D.C. 1978). "The decision whether to admit or require expert testimony on a particular state of facts is confided to the sound discretion of the trial court, and we have described that discretion as broad." *Varner v. District of Columbia*, 891 A.2d 260, 266 (D.C. 2006) (internal quotation marks omitted). We perceive no abuse of discretion in the trial court's ruling.

"In an action for negligence, the plaintiff has the burden of proving by a preponderance of the evidence the applicable standard of care, a deviation from that standard by the defendant, and a causal relationship between the deviation and the plaintiff's injury." *Id*. at 265 (internal quotation marks omitted). "Where negligent conduct is alleged in a context which is within the realm of common knowledge and everyday experience, the plaintiff is not required to adduce expert testimony either

to establish the applicable standard of care or to prove that the defendant failed to adhere to it." *Id.* (quoting *Beard*, 587 A.2d at 200). But, where the applicable standard of care is not known by the average juror because "the subject dealt with is so distinctly related to some science, profession, or occupation as to be beyond the ken of the average lay juror . . . expert testimony is required in order for a plaintiff to meet this burden."[2] *Tolu*, 945 A.2d at 601; *see Katkish v. District of Columbia*, 763 A.2d 703, 706 (D.C. 2000) (requiring expert testimony to establish standard of care because the "average lay person is not capable of discerning when a leaning tree may create a dangerous situation requiring an emergency response and whether the likelihood of the tree falling is related to the condition of the tree, the street, or other circumstances").

Appellants contend expert testimony is not required to establish the applicable standard of care here because this case is "about a seat — a stationary, non-technical object —" a subject within the common knowledge and experience of a reasonable

---

[2] We have repeatedly explained that the requirement to provide expert testimony to establish the applicable standard of care "has been applied more broadly to a variety of situations" with a "substantially smaller number of cases falling within the common knowledge exception." *Hill v. Metro. African Methodist Episcopal Church*, 779 A.2d 906, 908 n.1 (D.C. 2001) (quoting *District of Columbia v. Hampton*, 666 A.2d 30, 35-36 (D.C. 1995)).

juror.[3] We find appellants' argument unpersuasive because it conflates the knowledge gained from experience by a lay metro user with the knowledge required to establish a standard of care. While a reasonable juror in the District of Columbia has likely sat in a Metro railcar seat and could easily infer maintenance was required for a seat that is visibly defective, there is no evidence that was the case here, where both appellants sat on the bench seat. But a lay metro user would not know about the inspection protocols applicable to the maintenance and repair of seats installed in mass-transit rail systems. Without the testimony of an expert familiar with such protocols, the jury would be left to speculate as to what inspection systems and procedures are available and in general use for mass-transit rail systems, what level of inspection was reasonable under the circumstances here, whether the daily and monthly inspections WMATA performs on its railcars as described in the Poe Declaration comport with such standards, and whether there was a causal relationship between any deviation from the standards and the collapsed seat in this case. *See Hughes v. District of Columbia*, 425 A.2d 1299, 1303 (D.C. 1981) ("Absent such [expert] testimony, the jury will be forced to engage in idle speculation which is prohibited."); *accord Hill*, 779 A.2d at 910 (affirming entry of

---

[3] Appellants assert the mere "fact that the seat collapsed is evidence in and of itself of WMATA's failure to properly maintain the seat." We reject this argument as a matter of law because "the mere happening of an accident does not impose liability or reveal proof of negligence." *Davis*, 386 A.2d at 1200.

summary judgment where appellant did not designate an expert to testify as to the adequacy of crowd control measures in use at church where appellant was injured when a "pushing and shoving" crowd caused her to fall down a stairway).

Appellants rely on *Bostic v. Henkels & McCoy, Inc.*, 748 A.2d 421, 425-26 (D.C. 2000) (expert testimony not required to establish standard of care where appellee was injured when he fell through a gap in wood boards covering trench on sidewalk), and *District of Columbia v. Shannon*, 696 A.2d 1359, 1365-66 (D.C. 1997) (expert testimony not required to establish standard of care where child injured her thumb on playground slide with open holes that manufacturer recommended be closed), for the proposition that expert testimony is not needed to establish the applicable standard of care in this case. But the facts here render *Bostic* and *Shannon* distinguishable because the complexities involved in determining the frequency with which the seats in Metro railcars should be inspected, as well as what the scope of those inspections should entail, are not comparable to the more straightforward issues in those cases. While "[i]t takes no expert knowledge . . . to know that children stick their fingers in holes[,]" *Shannon*, 696 A.2d at 1365, or that it is negligent to leave a six-to-seven inch gap between boards covering a trench on which pedestrians are expected to walk, *Bostic*, 748 A.2d at 425-26, the average juror could not say whether WMATA's daily and monthly inspections were sufficient to satisfy the applicable standard of care owed by WMATA to appellants given the technical

nature of this issue. *Cf. Rajabi*, 650 A.2d at 1322 (requiring expert testimony to establish whether a particular maintenance schedule for street lights was sufficient to protect passers-by from the dangers of falling street lamp globes, and explaining "without it appellants' case could never have gone to the jury").

Thus, having failed to present any expert testimony to establish the applicable standard of care, or any evidence as to whether WMATA's monthly inspections and daily visual inspections were sufficient to comply with the applicable industry standards for the maintenance of seats in Metro railcars, and any causal relationship between a deviation and appellants' injuries, the trial court properly entered summary judgment in favor of WMATA.

## C. *Res Ipsa Loquitur*

Alternatively, appellants argue the trial court erred when it held the doctrine of *res ipsa loquitur* inapplicable to this case on the ground that they failed to proffer expert testimony establishing the applicable standard of care. Because appellants did not demonstrate that a lay juror could infer "as a matter of common knowledge" that Metro railcar seats do not collapse in the absence of negligence, we cannot say the trial court erred.

"The doctrine of *res ipsa loquitur* permits the jury to infer a lack of due care from the mere occurrence of an accident." *Hailey v. Otis Elevator Co.*, 636 A.2d 426, 428 (D.C. 1994) (italics added, internal quotation marks omitted). This doctrine permits an inference of negligence "where [the] plaintiff establishes that: (1) an event would not ordinarily occur in the absence of negligence; (2) the event was caused by an instrumentality in defendant's exclusive control; and (3) there was no voluntary action or contribution on plaintiff's part." *Mixon*, 959 A.2d at 60. "All three elements must be established in order for the doctrine to apply." *District of Columbia v. Billingsley*, 667 A.2d 837, 841 (D.C. 1995).

"At the threshold, [a] plaintiff must demonstrate that the injury ordinarily does not occur when due care is exercised." *Hailey*, 636 A.2d at 429 (internal quotation marks omitted). Thus, *res ipsa loquitur* may be invoked only "where a layman can infer negligence 'as a matter of common knowledge,' or where expert testimony is presented, that such accidents do not occur in the absence of negligence." *Id.* at 428-29 (quoting *Quin v. George Washington Univ.*, 407 A.2d 580, 583-84 (D.C. 1979)) (doctrine of *res ipsa loquitur* inapplicable where "[n]o expert was called to testify that escalators do not [jerk forward] without some negligence in their maintenance"). Thus, where a plaintiff relies upon "common knowledge" to invoke the doctrine of *res ipsa loquitur*, forgoing the presentation of expert testimony, "the fact that such events do not 'ordinarily' occur 'without negligence' must be based

upon a widespread consensus of common understanding." *Id.* at 429 (citing W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 39, at 244-48 (5th ed. 1984)).

Appellants contend photographs of their collapsed railcar seat are sufficient to establish the first element of *res ipsa loquitur*, asserting the photographs demonstrate the "seat would not have ordinarily collapsed had it not been for" WMATA's negligence. But appellants' reliance on these photographs is misplaced, as they alone do not establish a layperson could infer, "as a matter of common knowledge," that Metro railcar seats do not collapse in the absence of negligence. *Hailey*, 636 A.2d at 428; *see also Crenshaw v. Wash. Metro Area Transit Auth.*, 731 A.2d 381, 382 (D.C. 1999) ("we fail to see how a jury, in the absence of expert testimony or some other evidence of a violation of an established standard of care, can conclude that the [escalator] jerking motion in this case, as opposed to any other [escalator] jerking motion, is the result of negligence on the part of [WMATA]"). Rather, for appellants to establish a layperson could infer negligence as a matter of common knowledge from the collapse of their railcar seat, they needed to demonstrate that such common knowledge is "based upon a widespread consensus of common understanding," *Hailey*, 636 A.2d at 428, a burden appellants cannot meet. This is because laypersons do not possess knowledge of WMATA's railcar inspection protocols, let alone whether such protocols comport with applicable industry standards for the maintenance of seats used in mass-transit rail systems. *Cf.*

*Scott v. James*, 731 A.2d 399, 406 (D.C. 1999) (explaining it was incumbent upon appellant to present expert evidence as to the standard of care and process for applying hair relaxer where "neither the judge nor the jurors had any hint as to the chemical composition of the relaxer, the actual process used to apply the chemical relaxer, or the proper procedure" for applying the relaxer to appellant's hair or scalp). It is not enough to say that because the seat collapsed, there must have been a defect that would have been corrected but for WMATA's negligence. *Res ipsa loquitur* is not a doctrine of strict liability, but an alternative means of proving negligence. In light of the absence of expert testimony and because there is no evidence that the relationship between acceptable inspection and maintenance schedules and the collapsed seat in this case are a matter of common knowledge, had this case gone to a jury, the jurors would have been left to "speculat[e] on possibilities rather than weighing probabilities based on the evidence[,]" *Hailey*, 636 A.2d at 429, as to why appellants' seat collapsed. Thus, we cannot say the trial court erred in declining to permit an inference of negligence where appellants failed to present any evidence establishing Metro railcar seats ordinarily do not collapse absent negligent maintenance by WMATA.[4]

---

[4] Appellants' failure to satisfy the first element of *res ipsa loquitur* ends our review of the trial court's determination that an inference of negligence was unwarranted based on the evidence before the court. We need not address whether appellants could have satisfied the second or third elements of the doctrine of *res*

* * *

For the reasons set forth above, we affirm the trial court's grant of WMATA's motion for summary judgment.

*So ordered.*

---

*ipsa loquitur*, as all three elements must be satisfied for the doctrine to be applicable. *Billingsley*, 667 A.2d at 841.