**Ali TANGOREN, Appellant,**

v.

**Maurice STEPHENSON, Thomas Stephenson, and the District of Columbia, Appellees.**

**Shemsedin Hassan, Appellant,**

v.

**F.W. Clarke and the District of Columbia, Appellees.**

**James M. Biggs, Appellant,**

v.

**Elizabeth Lee, Adrian Fenty, and the District of Columbia, Appellees.**

**Nos. 07–CV–137, 07–CV–216, 07–CV–171.**

District of Columbia Court of Appeals.

Argued Dec. 11, 2008.

Decided Aug. 6, 2009.

Darryl F. White, for appellants Ali Tangoren and Shemsedin Hassan.

Daniel S. Roth, Washington, DC, with whom Kurt Berlin was on the brief, for appellant James M. Biggs.

Rawle Andrews, with whom Matthew A. Brinegar was on the brief, for appellee Elizabeth Lee.

David A. Hyden, Assistant Attorney General, with whom Peter J. Nickles, Attorney General for the District of Colum-

bia, Todd S. Kim, Solicitor General, and Donna M. Murasky, Deputy Solicitor General, were on the brief, for appellees Adrian Fenty and the District of Columbia.

Before REID, GLICKMAN and THOMPSON, Associate Judges.

GLICKMAN, Associate Judge:

Appellants Ali Tangoren, Shemsedin Hassan, and James M. Biggs ask us to reverse the trial court's ruling that their efforts to foreclose on properties they purchased at a tax sale were time-barred. We agree with appellants that the trial court misinterpreted the tax sale statute, and we reverse.

## I. The Statutory Framework

Under the Tax Clarity Act of 2000, when an owner of real property in the District of Columbia is delinquent in his property tax payments, the District may sell the property at a tax sale, which is conducted by the Office of Tax and Revenue (OTR).[1] The purchaser must deposit twenty percent of the purchase price at the tax sale and has an additional five days from the date of the sale to pay the balance due to the District.[2] After the price is paid in full, OTR issues the purchaser a certificate of sale.[3] The statute requires this certificate to set forth three dates: (1) "[t]he date of the original public tax sale to which the certificate corresponds;" (2) "[t]he date of the sale to the purchaser;" and (3) "[t]he date of the certificate."[4] These dates are

important because they trigger the start of certain statutory time periods.

Of relevance here are time periods governing the tax sale purchaser's institution of foreclosure proceedings against the property owner's right of redemption.[5] The purchaser must wait six months from *the date of the sale* before commencing such proceedings,[6] and must file any foreclosure action within one year from *the date of the certificate of sale.*[7] If "diligent proceedings to foreclose the right of redemption are [not] brought within one year from *the date of the certificate,* . . . the certificate shall become void, [and] all monies paid for the real property by the purchaser shall be forfeited to the District."[8] At that point in time, the right to foreclose on the property reverts to the District, which may elect to sell the property at a later tax sale or foreclose the right of redemption itself.[9]

## II. The Foreclosure Actions

Appellants Tangoren, Hassan, and Biggs were successful purchasers at a tax sale conducted by OTR on July 19, 2002. Some time after the tax sale, Tangoren and Hassan received their certificates of sale from OTR. Biggs did not receive a certificate of sale at this time—or so he claims, and there is no evidence in the record to contradict him. As required by law, the certificates furnished to Tangoren and Hassan set forth the dates of the original public tax sale and the sale to the purchaser (July 19, 2002, in both cases), as well as the date on which the six-month

---

1. D.C.Code § 47–1330 *et seq.* (2001).

2. *Id.* § 47–1347.

3. *Id.* § 47–1348.

4. *Id.* § 47–1348(a)(1), (3), (4).

5. The delinquent owner of the property may redeem it at any time before the foreclosure is final by paying the back taxes, interest, and penalties owed. *Id.* § 47–1360.

6. *Id.* § 47–1370(a).

7. *Id.* § 47–1355(a)(1).

8. *Id.* § 47–1348(a)(12) (emphasis added).

9. *Id.* § 47–1353, 1355.

waiting period would end (January 19, 2003). However, the certificates did not set forth the third statutorily—required date—the date of the certificate itself; nor did the undated certificates set forth a specific date on which the one-year period for initiating foreclosure proceedings would end.

Over the next two-and-one-half years, appellants commenced no foreclosure proceedings. On January 28, 2005, OTR sent each appellant a letter, informing them that

[a]n action to foreclose upon the right of redemption must be filed . . . within one year from the date of the Certificate of Sale. The Certificate of Sale is void if an action to foreclose the right of redemption is not filed within the one-year period . . . . The intent of this law is to bring closure to a tax sale in a timely manner by ensuring that all foreclosure actions are filed within one year from the date of the Certificate of Sale.

The date on the Certificates of Sale issued for the 2001 and 2002 Tax Sales did not clearly define the date that the Certificates of Sale were issued. YOU ARE HEREBY NOTIFIED THAT THE OFFICE OF TAX AND REVENUE ("OTR") SHALL DEEM *MARCH 28, 2005* AS THE EXPIRATION OF THE ONE–YEAR PERIOD. ANY SUCH CERTIFICATE OF SALE FOR WHICH A FORECLOSURE ACTION HAS NOT BEEN FILED BY *MARCH 28, 2005* SHALL BE DEEMED VOID BY OTR.

\* \* \*

This notice is for OTR procedural uses only. You may not rely upon this notice as a legal extension of the filing deadline, and should consult your legal advisor to determine whether your Certificate of Sale is void before you incur additional expenses.

In response to this notification, Tangoren and Hassan commenced foreclosure actions in Superior Court before March 28, 2005. Meanwhile, on March 7, 2005, Biggs requested that OTR issue him a certificate of sale for the property he had purchased on July 19, 2002. On March 23, Biggs received a certificate, which, like Tangoren's and Hassan's certificates, bore the date of the tax sale and the date of the sale to the purchaser but not the date of the certificate itself. In addition, however, Biggs's certificate was marked "Duplicate" in the upper right-hand corner and was dated "3/23/2005" in the lower left-hand corner. Biggs proceeded to initiate his foreclosure action before the March 28, 2005, deadline set by OTR.

Tangoren's and Hassan's foreclosure actions were dismissed by a magistrate judge, who concluded that they were not filed within the statutory one-year window and hence were time-barred. On review, Superior Court Associate Judge Zeldon affirmed the dismissals, explaining that because OTR "only affixed two dates to the certificate[s]—the date of the sale (January 19, 2002) and the date when the six month waiting period would cease (January 19, 2003)—OTR could only have intended that the date of the certificate be the same as the date of the sale." Subsequently, the judge sua sponte dismissed Biggs's action as also having been "filed well beyond the applicable statutory deadline." In denying Biggs's motion for reconsideration, the judge elaborated on her reasoning as follows:

The certificate in this case provides that the date of the sale is July 19, 2002. The [OTR] then provided the date when an action to foreclose the right of redemption could be filed—January 19, 2003. Where no other date is included

on the certificate to identify what OTR considered the date of the certificate, this Court can only conclude that OTR made no distinction between the sale date and the certificate date. In any event, however, OTR is an administrative agency of the District of Columbia. OTR cannot extend the statute of limitations on a tax sale certificate—regardless of whether the purchaser promptly received a certificate or not—three years from when the sale actually occurred, especially when a date is provided on the certificate.

Appellants' timely appeals were consolidated by this Court.

## III. Discussion

■■■ At bottom, this case is one of statutory interpretation, and "we begin with the statute's plain language. If the statutory language is unambiguous, we may end there as well." [10] We perceive no material ambiguity: the tax sale statute explicitly requires a certificate of sale to have a date, and the statute expressly distinguishes that date from the date on which the sale was conducted and the date of purchase.[11] We are not free to ignore the distinction or treat it as surplusage, nor was OTR free to do so.[12] The way tax sales are structured, the dates may well be different, because the certificate of sale (which must identify the purchaser [13]) can-

not be prepared and issued until *after* the purchase is completed, which may be up to five days after the date of the sale.

We find no support in the record for the trial court's surmise that "OTR could only have intended that the date of the certificate[s] be the same as the date of the sale." If anything, that surmise is contradicted by the admission in OTR's letters that the certificates "did not clearly define" the dates they "were issued," which indicates that OTR did not intend the two dates to be the same. More fundamentally, though, OTR's unexpressed intention as to a certificate's date is irrelevant under the tax sale statute. OTR is required to state the date of the certificate with specificity because so much rides on it. Uncertainty cannot be tolerated because it is *that* date—and not the date of the sale or the date of the purchase—that starts the fixed one-year period in which a purchaser must commence "diligent" action to foreclose or forfeit his entire investment.

We are not persuaded by the trial court's reasoning that OTR was not empowered to "extend the statute of limitations on a tax sale certificate" via its letters purporting to set a March 28, 2005, deadline for filing foreclosure actions. Because the certificates were undated, there were no periods of limitations for OTR to "extend." It is immaterial that the Coun-

---

10. *1836 S. Street Tenants Ass'n, Inc. v. Estate of B. Battle*, 965 A.2d 832, 838 (D.C.2009) (quotation marks and citation omitted).

11. No party before us argues that the certificates at issue are void because they lacked the required date; that argument not having been made, we decline to entertain it. *See, e.g., Abdus–Price v. United States*, 873 A.2d 326, 332 n. 7 (D.C.2005).

12. *See, e.g., Sosa v. Alvarez–Machain*, 542 U.S. 692, 711 n. 9, 124 S.Ct. 2739, 159 L.Ed.2d 718 (2004) (noting the "usual rule that 'when the legislature uses certain language in one

part of the statute and different language in another, the court assumes different meanings were intended.' ") (quoting 2A NORMAN J. SINGER, SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION § 46:06, p. 194 (6th rev. ed. 2000)); *Thomas v. District of Columbia Dep't of Employment Servs.*, 547 A.2d 1034, 1037 (D.C. 1988) ("A basic principle [of statutory interpretation] is that each provision of the statute should be construed so as to give effect to all of the statute's provisions, not rendering any provision superfluous.").

13. *See* D.C.Code § 47–1348(2).

cil intended foreclosure actions to be filed reasonably promptly after the tax sales occurred. Under the tax sale statute, unless and until OTR dates a tax sale certificate, the limited time in which the purchaser must file a foreclosure action does not begin to run.

We conclude, therefore, that appellants' foreclosure actions were not time-barred and should not have been dismissed on that ground.[14] It is worth adding that the appellee property owners have not been prejudiced. On the contrary, by delaying foreclosure, appellants have allowed them many additional months to pay their delinquent taxes and redeem their properties. While our holding does preclude the District from now exercising its statutory rights of reversion, the District has only itself to blame for that; it could have started the clock running by issuing proper certificates of sale, and it certainly could have sought to rectify the omission in the 2001 and 2002 certificates before January 2005.

## IV. Conclusion

For the foregoing reasons, we reverse the dismissal of appellants' foreclosure complaints and remand for further proceedings.

---

14. As appellants filed their actions before March 28, 2005, we need not decide the enforceability of that purported deadline. In effect, OTR's specification of that date in January 2005 implies that it could legally backdate the sale certificates—a dubious proposition, we think.