DISTRICT OF COLUMBIA DEPART-
MENT OF CONSUMER AND REGU-
LATORY AFFAIRS, Petitioner,

v.

Jacqueline STANFORD as the Personal
Representative of the Estate of Juanita
M. Stanford, Respondent.

No. 08–AA–80.

District of Columbia Court of Appeals.

Argued June 26, 2009.
Decided Aug. 13, 2009.

Mary L. Wilson, Senior Assistant Attorney General, with whom Peter J. Nickles, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, and Donna M. Murasky, Deputy Solicitor General, were on the brief, for petitioner.

Mark L. Shaffer, with whom Brandy A. Osimokun and Randy Alan Weiss, were on the brief, Washington, for respondent.

Before WASHINGTON, Chief Judge, and THOMPSON, Associate Judge, and NEBEKER, Senior Judge.

NEBEKER, Senior Judge:

The District of Columbia's Department of Consumer and Regulatory Affairs seeks our review of the decision by the Office of Administrative Hearings removing a lien against real property and voiding past housing code violations. Because the decision was made without jurisdiction over the subject matter and was in violation of the District of Columbia's Anti–Injunction Act, we reverse.

### FACTUAL AND PROCEDURAL SUMMARY

Amos and Juanita Stanford owned, as tenants by the entirety, a multi-unit apartment building located at 2384 Champlain Street, in Northwest Washington, D.C. Amos died in 1995, and Juanita died in 2001. The property, as part of the estate, entered probate, but the proceedings were closed by the Superior Court's Probate Division in 2004, without conveyance of the building. Respondent Jacqueline Stanford, Amos and Juanita's daughter, was the manager of the building, although the District's Office of Tax and Revenue still listed Amos Stanford as the owner.

On July 5, 2005, the District of Columbia Department of Consumer and Regulatory Affairs ("the Department") issued a Housing Violation Notice ("Violation Notice") to Amos Stanford. The Department sent the Violation Notice to Amos Stanford's last known address, 4025 South Dakota Avenue in Northeast Washington, D.C., and advised him that during its recent building inspection it found twenty-seven violations of Title 14 of the District of Columbia Municipal Regulations. The violations ranged from exposed wires, 14 DCMR § 706.2, to missing fire extinguishers, 14 DCMR § 901.1, to rotting window frames, 14 DCMR § 705.6. The Violation Notice provided notice that all infractions must be corrected within thirty days from the date of service or fines would be imposed. The Violation Notice also gave notice that a reinspection would be conducted on October 4, 2005. The final page of the Violation Notice, under the heading "IMPORTANT" stated:

> In the event of your failure to correct said conditions or show cause why you should not be required to do so [the] Mayor of the District of Columbia, under the authority of Section 42–3131 of the D.C.Code (2000 Edition as amended), [may] cause said condition to be corrected, assess the cost and all expenses incident thereto, as a tax against

the property on said condition existed; carry such tax on the regular tax rolls of the District of Columbia; and collect such tax in the manner as general taxes in the District are collected.

The Violation Notice also stated, "Any owner, licensee, or operator of any premises subject to the provisions of this subtitle who is adversely affected by [the] determination made ... may file an appeal in writing with the Board of Appeals and Review ... within (10) days after the date of service of the notice of violation...."

On August 19, 2005, Jacqueline Stanford, through her attorney, replied in writing to the Department and was identified as "the owner of the Premises." After further proceedings, not relevant to the issue we must decide here, a hearing was scheduled for the purpose of reviewing the Department's repair work and tax lien.[1]

At a status conference before the Hearing Office, the Administrative Law Judge ("ALJ") asked the parties to consider whether the Hearing Office possessed jurisdiction and the authority to order a remedy. The Hearing Office granted a continuance and another hearing was scheduled for May 8, 2007. Prior to that hearing, the Department filed a motion to dismiss, arguing that the case was moot, because the lien had already been filed, and that the Hearing Office was without jurisdiction to hear this case, because the Anti–Injunction Act, D.C.Code § 47–3303, provides that the exclusive remedy for a challenge to a tax lien must come within six months of the assessment and only after the tax penalty is paid. The Hearing Office denied the Department's Motion to Dismiss. It also concluded that the original Infraction Notice issue was closed and that Stanford should file a "Petition for

Hearing and Relief" to directly challenge the abatement and the tax lien.

On August 31, 2007, Stanford filed a Petition for Hearing and Relief seeking to void the tax assessment and remove the lien from the building. The Department filed a Motion to Dismiss, repeating its arguments that the Hearing Office lacked jurisdiction. After an Answer was filed, the Hearing Office held that the District violated Stanford's due process and was without authority to conduct the abatement and impose the lien. The Hearing Office ordered that all actions against Amos Stanford were null and void, the Violation Notice and Infraction Notice were void, and that the District must remove the tax lien against the building. The Department petitions this court for review, arguing that the District's Anti–Injunction Act (D.C.Code § 47–3307) (2001) prohibited the Hearing Office from reviewing the legality of the tax lien, or enjoining it, and that the validity of the tax lien springs from its *in rem* nature.

## ANALYSIS

◾ In statutory interpretation, this court defers to the agency charged with a statute's routine administration. Here we are presented with administrative action pursuant to portions of the Housing Authority Act and its associated Municipal Regulations, and also interpretations of the Administrative Procedure Act and the Anti–Injunction Act. While the Hearing Office is responsible for "deciding administrative appeals involving a substantial number of different agencies ... it does not have the kind of subject matter expertise with respect to" the Housing Authority Act and the Anti–Injunction Act "that would warrant deference on our part when we interpret the statute." *Washington v.*

---

1. In the interim, the Department did the required repair work at a cost of $96,622, because the owner did not. A tax lien in that amount was placed on the property.

*District of Columbia Dep't of Public Works*, 954 A.2d 945, 948 (D.C.2008). Further, if the Hearing Office is without jurisdiction for its actions, likewise no deference is warranted.

 D.C.Code § 47–3307 (2001) states, "No suit shall be filed to enjoin the assessment or collection by the District of Columbia or any of its officers, agents, or employees of any tax." The purpose of the Anti–Injunction Act is to eliminate, or minimize, disruptions to the collection, and assessment of taxes. "Any departure from the principle of 'pay first and litigate later' threatens an essential safeguard to the orderly functioning of government." *Barry v. American Tel. & Tel. Co.*, 563 A.2d 1069, 1073 n. 10 (D.C.1989) (citing *Bull v. United States*, 295 U.S. 247, 259, 55 S.Ct. 695, 79 L.Ed. 1421 (1935)). Taxes have been described as the "life-blood of government" and their "prompt and certain availability" as "an imperious need." *District of Columbia v. Craig*, 930 A.2d 946, 952–53 (D.C.2007) (citing *Bull, supra*, 295 U.S. at 259, 55 S.Ct. 695). Litigation enjoining the collection of taxes by the government not only interferes with the services government provides, but it also disrupts the truly indispensable duty to collect taxes. The Anti–Injunction Act precludes both injunctive relief and declaratory relief, the latter because it may "in every practical sense operate to suspend collection of the state taxes until the litigation is ended in the very same manner an injunction would." *Barry, supra*, 563 A.2d at 1073 (internal quotations and citation omitted). As we have stated before, even declaratory relief would merely be another form of anticipatory relief that would effectively enjoin the collection of taxes by the District and subvert the purpose for which the Anti–Injunction Act was created. *Id.* at 1074. *See also District of Columbia v. United Jewish Appeal Fed'n of Greater Washington*, 672 A.2d 1075 (D.C. 1996). A lien on real property falls within the scope of "any tax" in the plain language of the Anti–Injunction Act, as does any penalty for failure to pay taxes owed. *Id.* at 1079 n. 3. We have "consistently interpreted" that the Act "precludes a court from suspending the collection of taxes by the District except in extraordinary circumstances." *Agbaraji v. Aldridge*, 836 A.2d 567, 569 (D.C.2003) (internal quotations and citations omitted). Various Federal courts have held that a lien is a tax for the purposes of the Federal Anti–Injunction Act, 28 U.S.C.A. § 1341. *See, e.g., Locklear v. Remington*, 77 Fed.Appx. 594 (3rd Cir.2003); *United States v. Boyce*, 153 F.Supp.2d 1194 (S.D.Cal.2001); *S/N1 Reo Limited Liab. Co. v. City of New London*, 127 F.Supp.2d 287 (D.Conn.2000).

 The required procedure to challenge either a tax or an assessment, or in this case, a lien lodged against real property, is to pay the tax and within six months of payment, bring a refund suit against the District, or its agency, in the Tax Division of Superior Court. Other than an agency hearing prescribed by statute,[2] the Superior Court is the only entity that has jurisdiction over the legality of a tax. *See Tolu*

---

2. For example, in *District of Columbia v. Green*, 310 A.2d 848, 852–53 (D.C.1973), we held that homeowners met one of the equitable exceptions to the Anti–Injunction Act, because they were notified of their property assessments after the time period for which their administrative remedies were available. Some tax measures, such as property tax assessments, have administrative remedies as defined by statute. *See* D.C.Code § 47–825.01 (2001). Stanford has no such administrative remedies available to her. Any action to enjoin the collection of taxes, not authorized by a relevant statute, is a "suit" within the meaning of the Anti–Injunction Act.

*Tolu v. District of Columbia,* 906 A.2d 265, 267 (D.C.2006).

We hold that the Hearing Office erred by ordering removal of the lien and voiding the Violation Notice discrepancies. The Department did not err in its pursuit of the abatement. Because the Hearing Office's Final Order (CR–C–07–100077) is reversed, the lien against the property on 2384 Champlain Street, N.W., is relodged. Any further proceedings on this matter must adhere to the Anti–Injunction Act.

Accordingly, the order from which this petition for review is sought is

*Reversed in its entirety.*