# District of Columbia
# Court of Appeals

**No. 14-CV-1125**

NELDA PERKINS,



FILED

AUG 11 2016

DISTRICT OF COLUMBIA
COURT OF APPEALS

           Appellant,

   v.                              **CAB-7416-12**

DISTRICT OF COLUMBIA, *et al.*,

           Appellees.


On Appeal from the Superior Court of the District of Columbia
Civil Division


BEFORE: GLICKMAN and THOMPSON, *Associate Judges*; and FARRELL, *Senior Judge*.

## J U D G M E N T

This case was submitted to the court on the transcript of record and the briefs filed, and without presentation of oral argument. On consideration whereof, and for the reasons set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the judgment of the Superior Court is affirmed.


           For the Court:

           JULIO A. CASTILLO
           Clerk of the Court


Dated: August 11, 2016.

Opinion by Associate Judge Phyllis D. Thompson.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-CV-1125

NELDA PERKINS, APPELLANT,

v.

DISTRICT OF COLUMBIA, *et al.*, APPELLEES.

FILED 8/11/16
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

Appeal from the Superior Court
of the District of Columbia
(CAB-7416-12)

(Hon. Jeanette Jackson Clark, Trial Judge)

(Submitted May 5, 2016                           Decided August 11, 2016)

*Michael C. Forster* for appellant.

*Karl A. Racine*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, *Loren L. AliKhan*, Deputy Solicitor General, and *Mary L. Wilson*, Senior Assistant Attorney General, were on the brief for appellee.

Before GLICKMAN and THOMPSON, *Associate Judges*, and FARRELL, *Senior Judge*.

THOMPSON, *Associate Judge*:   In March 2012, appellant Nelda Perkins sued the District of Columbia ("the District"), alleging breach of an oral settlement agreement. The Superior Court granted summary judgment in favor of the District on the ground that the District employee who allegedly agreed to a settlement on

the District's behalf had no actual authority to bind the District. Appellant argues that the ruling was erroneous because there were material facts in dispute regarding the employee's authority to bind the District. Appellant also argues that the motion judge erred in concluding that appellant could not have reasonably relied on a representation that the employee had authority to enter into the putative agreement. For the reasons that follow, we affirm the judgment of the Superior Court.

## I.

On June 6, 2005, the side wall of a house owned by appellant collapsed after being damaged by a storm. The next day, the District of Columbia Department of Consumer and Regulatory Affairs ("DCRA") issued a Notice of Violation ("NOV") ordering appellant to make repairs. When appellant failed to repair the property, DCRA authorized a contractor to stabilize the wall at a cost of $36,500. Once the work was performed (in June 2005), the District issued a special tax assessment for the cost of repairs and, thereafter, filed a tax lien against the property. Appellant alleges that she did not learn of the tax lien until August 2009, by which time, because of accrued interest, the lien amount was $67,314.02.

Mortgagee SunTrust Mortgage Company ("SunTrust") paid the lien and added the cost to appellant's outstanding mortgage indebtedness on the property.

On January 18, 2011, appellant filed a hearing request in the District of Columbia Office of Administrative Hearings ("OAH"), challenging the NOV and the tax lien. On March 8, 2011, the assigned Administrative Law Judge ("ALJ") ordered the parties (appellant and DCRA) to participate in mediation.[1]

Appellant and her counsel attended the mediation session along with Lisa Branscomb, a non-attorney Civil Advocate, who appeared on behalf of DCRA. Before the mediation commenced, the parties signed a standard "Agreement to Mediate," which stated, *inter alia*, that the signatory for each party has "full authority to negotiate on behalf of and enter into a settlement for themselves and the party or parties whom they represent." The agreement gave the parties the option of asking the mediator to reduce to writing any settlement reached, preparing a consent order for the assigned ALJ's approval, or agreeing to jointly dismiss the case once a settlement was reached. Per the Agreement to Mediate, if no settlement was reached, "a formal administrative hearing" would be held.

---

[1] The ALJ's order stated that the parties had "expressed their desire to resolve this matter through mediation" with OAH's assistance.

The mediation took place before an OAH mediator on April 12, 2011, even though, on April 11, 2011, DCRA had filed a motion to dismiss the OAH action.[2] Afterwards, the mediator completed a form indicating that appellant would file "[a] motion to dismiss [with] prejudice [n]o later than 30 days from mediation date if all actions are taken per settlement agreement." On July 13, 2011, however, the ALJ scheduled a status hearing after concluding that "the mediation has not resulted in a resolution of this matter." On August 18, 2011, appellant withdrew her request for a hearing. On August 24, 2011, the ALJ dismissed the OAH case without prejudice, interpreting appellant's withdrawal request as "a Motion for Voluntary dismissal[.]"

On March 30, 2012, appellant filed her complaint in Superior Court, claiming that DCRA breached the parties' oral settlement agreement that required DCRA to dismiss the NOV and to repay the funds that SunTrust had paid to satisfy the special tax assessment and accrued interest.[3] The complaint asserted that

---

[2]    The District asserts that the basis for the motion was that appellant could challenge the tax lien only by bringing a refund suit in the Superior Court, which has exclusive jurisdiction to handle disputes concerning tax liens on real property.

[3]    The complaint also alleged that the District had breached the covenant of good faith and fair dealing.

Branscomb "held [her]self out as having the authority to mediate and resolve the immediate case" and that appellant "reasonably and justifiably relied on [Branscomb's] aforementioned representations[.]"

After discovery, the District filed a motion for summary judgment, arguing that it was entitled to judgment because Branscomb did not have the authority to bind the District to the alleged agreement. The District attached to its motion declarations from Branscomb and from DCRA Civil Advocate David Lang, Branscomb's supervisor. Lang averred in his affidavit that he agreed to mediation at the first OAH status conference because he "needed to know more about [appellant's] claim." Thereafter, having read through a mediation "notebook" provided by appellant, Lang came to understand that appellant was asserting a claim relating to a tax lien. According to Lang, with that understanding, he realized that the "tax lien issues . . . require[d] adjudication [not before OAH but in] the Superior Court" pursuant to *District of Columbia Dep't of Consumer & Regulatory Affairs v. Stanford*, 978 A.2d 196 (D.C. 2009).[4] Lang further averred

---

[4]  In *Stanford,* this court held that "[t]he required procedure to challenge either a tax or an assessment, or . . . a lien lodged against real property, is to pay the tax and within six months of payment, bring a refund suit against the District, or its agency, in the Tax Division of Superior Court. Other than an agency hearing prescribed by statute, the Superior Court is the only entity that has jurisdiction over the legality of a tax." 978 A.2d at 199-200.

that he met with his supervisor, Eric Rogers, to ask whether he (Lang) "had any authority to make a monetary settlement . . . which would involve returning a portion of the abatement costs[.]" According to Lang, Rogers "specifically stated that we would not be returning any money[.]" Accordingly, Lang met with Branscomb before the scheduled mediation, conveyed "Mr. Rogers' position . . . that in no circumstances would we make any money settlement[,]" and instructed Branscomb to explain to appellant and her counsel that the OAH appeal was moot, that jurisdiction over a challenge to the tax lien did not lie with OAH, and that the District would move for summary dismissal if the case proceeded. Lang averred that he gave a copy of *Stanford* to Branscomb before the mediation and instructed her to provide a copy to appellant.

Branscomb's declaration corroborated Lang's account about his instructions to her. Branscomb averred that Lang instructed her to go to the mediation and request that appellant dismiss the OAH appeal. She further averred that she was "without any authority to settle the matter" by agreeing to pay money. She also averred that she explained the District's position to appellant and her counsel and that they "agreed that dismissal would be appropriate." According to Branscomb, she "agreed to look into th[e] possibility" of rescinding the NOV, but "never agreed that the District would pay [appellant] money."

In opposing the District's summary judgment motion, appellant argued that there was "a litany of evidence that raise[d] credibility questions [about Branscomb's claimed lack of authority] and point[ed] . . . to factual disputes" that made summary judgment inappropriate. Appellant attached to her opposition her then-counsel's declaration corroborating her description of the terms of the alleged settlement agreement, as well as a copy of a letter she wrote to SunTrust on April 15, 2011, advising SunTrust that Branscomb was awaiting a communication from SunTrust "setting forth the total amount that the District of Columbia Government has to refund to SunTrust Bank for monies improperly billed and paid by the bank."

On September 3, 2014, the motion judge (the Honorable Jeanette Clark) granted the District's motion for summary judgment, ruling that Branscomb "lacked authority to bind the District of Columbia." Judge Clark reasoned that "[e]ven crediting the evidence in the light most favorable to [appellant]," appellant "should have known that a low level employee such as Ms. Branscomb had no authority to bind the [District] notwithstanding any documents that she signed to the contrary." Judge Clark cited the "'basic principle of District law that a

contracting official cannot obligate the District to a contract in excess of his or her actual authority.'"

Appellant now argues that Judge Clark erred in finding (1) no genuine issue of material fact regarding Branscomb's authority to bind the District and (2) no genuine issue of material fact regarding whether appellant's "reliance on Branscomb's apparent authority was unreasonable."[5]

## II.

Summary judgment is proper if the moving party can "show that there is no genuine issue as to any material fact and that [she] is entitled to a judgment as a matter of law." Super. Ct. Civ. R. 56 (c). In considering a motion for summary judgment, the trial court must view the evidence "in the light most favorable to the nonmoving party, who is entitled to all favorable inferences which may reasonably be drawn from the evidentiary materials." *Phelan v. City of Mt. Rainier*, 805 A.2d

---

[5] Appellant also contends that there is an "issue of material fact regarding whether Branscomb promised to settle the case by repaying [appellant]." This argument is beside the point (and we therefore do not address it further), because we assume for purposes of our analysis (and the District likewise assumes *arguendo* in its brief) that Branscomb did make the promise appellant alleges.

930, 936 (D.C. 2002) (internal quotation marks omitted). "Our review of an order granting summary judgment is *de novo*, and we apply the same substantive standards which are to be applied by the trial court." *Allen v. Yates*, 870 A.2d 39, 44 (D.C. 2005).

"Once the movant has made a sufficient evidentiary showing to support the motion, the opposing party's response 'must set forth specific facts showing that there is a genuine issue for trial.'" *Night & Day Mgmt., LLC v. Butler*, 101 A.3d 1033, 1037 (D.C. 2014) (quoting Super. Ct. Civ. R. 56 (e)). A party cannot avoid summary judgment "merely by impugning the honesty" of the other party's witness. *See Bradshaw v. District of Columbia*, 43 A.3d 318, 323 (D.C. 2012) (internal quotation marks and alteration omitted); *Clampitt v. American Univ.*, 957 A.2d 23, 37 (D.C. 2008) (plaintiff cannot "avoid summary judgment by merely asserting that the jury might, and legally could, disbelieve the defendants") (internal quotation marks omitted).

It is "well settled that . . . the party relying upon the agent's authority to bind his principal [to an agreement] bears the burden of proving that the agent's act was authorized[.]" *Lewis v. Washington Metro. Area Transit Auth.*, 463 A.2d 666, 673 (D.C. 1983). It also is "'a basic principle of District law that a contracting official

cannot obligate the District to a contract in excess of his or her actual authority.'" *See District of Columbia v. Brookstowne Cmty. Dev. Co.*, 987 A.2d 442, 446-47 (D.C. 2010) (emphasis omitted). "A government agent cannot validate a contract merely by averring that she is authorized to enter it, if no such authority exists; the rule applies with equal force even if 'the agent h[er]self may have been unaware of the limitations upon h[er] authority.'" *Williams v. District of Columbia*, 902 A.2d 91, 96 (D.C. 2006). The existence of an enforceable contract is a question of law reviewed *de novo*. *See Brookstowne*, 987 A.2d at 446. Further, "this court has repeatedly held that one who contracts with a government agent is constructively notified of the limits of that agent's authority, and any reliance on contrary representations cannot be reasonable." *Williams*, 902 A.2d at 96.

## III.

Appellant argues that summary judgment was improper because there was sufficient evidence to raise a genuine dispute as to whether Branscomb had actual authority to bind the District to the (alleged) agreement to repay the tax-lien amount. We conclude to the contrary that appellant did not "set forth specific facts

showing that there is a genuine issue for trial." *Night & Day Mgmt.*, 101 A.3d at 1037 (internal quotation marks omitted).

Citing *Monument Realty LLC v. Washington Metro. Area Transit Auth.*, 535 F. Supp. 2d 60, 70-71 (D.D.C. 2008), appellant asserts that an agent's actual authority to bind a governmental entity may be either "express actual authority" or "implied actual authority."[6] As to "express actual authority," appellant has pointed to no statute, regulation, or DCRA rule or policy document that gave Civil Advocates such as Branscomb authority to agree on the District's behalf to repay funds, and appellant has made "no showing . . . that [Branscomb] had been delegated authority to commit the District to [re]pay" the tax-lien amount. *Mamo v. District of Columbia*, 934 A.2d 376, 386 (D.C. 2007); *see also District of Columbia v. McGregor Properties, Inc.*, 479 A.2d 1270, 1273 (D.C. 1984) ("We find that there was no contract between the District of Columbia and McGregor . . . [because] [n]othing in the record supports McGregor's assertion that authority to contract was delegated to the Surveyor by the Mayor."). Appellant contends that

---

[6] "A government official possesses implied actual authority when such authority is considered to be an integral part of the duties assigned to a government employee." *Monument Realty*, 535 F. Supp. 2d at 71 (internal quotation marks omitted). "Contracting authority is integral to an employee's duties when the employee cannot perform his assigned tasks without such authority and when the relevant agency's regulations do not grant the authority to other agency employees." *Id.*

Branscomb must have had authority to enter into the alleged settlement agreement because she was "sent to mediation to settle the case[,]" but that argument is unpersuasive; even if Branscomb had actual authority to negotiate *some type* of settlement, appellant has come forward with no evidence that Branscomb had authority to negotiate the particular type of settlement alleged here — an agreement that the District would repay over $67,000.  As the District puts it, Branscomb's authority to go to mediation on behalf of DCRA "did not mean [that] she had *carte blanche* to settle on any terms whatsoever or that there were no limits on her authority." [7]

Appellant's argument that Judge Clark "erroneously ruled that Lisa Branscomb had no implied actual authority to bind the District" fares no better. [8] "The doctrine of implied actual authority focuses upon the agent's understanding of his authority:  whether the agent reasonably believed, because of conduct of the

_____

[7]   Moreover, the moot NOV and the jurisdictional defect are factors that strongly suggest that Branscomb's superiors would not have authorized her (or anyone else) to enter into the alleged settlement agreement even if they could have conferred such authority.

[8]   Appellant also suggests that Branscomb had "apparent authority" to bind the District to an agreement.  However, as Judge Clark recognized, "the doctrine of apparent authority does not apply to dealings with the government."  *Littlejohn v. Washington Metro. Area Transit Auth.*, No. 90-1724, 1992 WL 122755, at *2 (D.D.C. May 28, 1992).

principal (including acquiescence) communicated directly or indirectly to him, that the principal desired him so to act." *Lewis*, 463 A.2d at 670 n.7 (emphasis omitted). Here, appellant came forward with no evidence that Branscomb reasonably believed, because of the conduct of her superiors communicated directly or indirectly to her, that DCRA desired her to settle the OAH case by agreeing to repayment of the tax-lien amount. *Id.* The only evidence on the point is squarely to the contrary: Branscomb's supervisor Lang averred that his own supervisor specifically told him that DCRA "would not be returning any money"; Lang so instructed Branscomb before the scheduled mediation; and, according to both Lang and Branscomb, Lang instructed Branscomb to go to the mediation and request that appellant dismiss the OAH appeal, and she (Branscomb) went to the mediation "without any authority to settle the matter" by agreeing to a repayment.

Appellant argues, however, that the record "cast[s] serious doubts about [Branscomb's] veracity" and that Lang's explanation "is not credible[.]" She asserts that "there are multiple undisputed pieces of evidence contradictory to the District's version of events that would provide plenty of ammunition for a factfinder to infer that the two District employees submitted untruthful affidavits." But such assertions were not enough to avoid summary judgment, because appellant cited no independent evidence that Branscomb understood herself to

have authority to agree that the District would repay the tax-lien amount. *See Lewis*, 463 A.2d at 670 n.7; *see also Bradshaw*, 43 A.3d at 323 (explaining that when an argument in opposition to a motion for summary judgment "boils down to an allegation that defense witnesses are lying" and "when challenges to witness' credibility are all that a plaintiff relies on, and he has shown no independent facts — no proof — to support his claims, summary judgment in favor of the defendant is proper") (quoting *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008)); *Clampitt*, 957 A.2d at 37 ("[T]he mere possibility of disbelief is not enough to avoid summary judgment. There must instead be evidence from which a rational factfinder could infer that the [defendants] lied.") (quoting *Gould v. Kemper Nat'l Ins. Cos.*, No. 95-1883, 1996 U.S. App. LEXIS 4844, *5 (7th Cir. 1996) (citation and internal quotation marks omitted)).

Appellant bore the burden of proving that Branscomb had authority to bind her principal. *See Lewis*, 463 A.2d at 673. Because appellant did not come forward with evidence that Branscomb had express or implied actual authority to bind the District to the (alleged) agreement to repay the tax-lien amount, the District was entitled to, and Judge Clark did not err entering, summary judgment

on appellant's breach of contract and breach of the covenant of good faith and fair dealing claims.[9]

## IV.

We next address appellant's claim that summary judgment was improper because there was a genuine issue of material fact regarding whether her reliance on Branscomb's apparent authority was reasonable. Appellant contends that Branscomb committed "affirmative misconduct which should estop the District from denying the contract after [appellant's] reasonable reliance." She asserts that, believing that the District would honor its (alleged) agreement, she withdrew her OAH case and held off bringing other Superior Court litigation, "to the point of all statute[s] of limitations expiring for her valid claims regarding the District's use of unlicensed contractors and failure to provide her with proper notice."[10]

---

[9] *Cf. Clampitt*, 957 A.2d 23, 38 (D.C. 2008) (holding that the trial court properly dismissed plaintiff's claims for breach of the covenant of good faith and fair dealing where there was no oral or implied contract of employment).

[10] The District argues that appellant's estoppel claim is forfeited because appellant did not raise it in the trial court. Our review of the record shows that appellant stated in her opposition to the District's motion for summary judgment that, in return for the District's promise to repay the tax-lien amount, she forwent pursuing such claims against the District. Moreover, Judge Clark addressed the

(continued…)

To make out a case of estoppel against the District, a plaintiff must show "that the District made a promise, that [the plaintiff] suffered injury due to reasonable reliance on the promise[,] and that enforcement of the promise would be in the public interest and would prevent injustice." *McGregor Properties*, 479 A.2d at 1273. We need not discuss all the prongs of that test because we agree with Judge Clark that appellant cannot show reasonable reliance on any representation by Branscomb to the effect that Branscomb had authority to enter into an agreement that the District would repay the tax-lien amount. On the record before us, we also see no evidence that appellant relied to her detriment on the putative settlement agreement.

As a matter of law, "a person making or seeking to make a contract with the District is charged with knowledge of the limits of the agency's (or its agent's) actual authority" and, in light of that constructive notice, "cannot reasonably rely on representations to the contrary." *District of Columbia v. Greene*, 806 A.2d 216, 222 (D.C. 2002). On this record, there is also the additional fact, cited by Judge

---

(…continued)
issue of the reasonableness of appellant's reliance on Branscomb's conduct. In light of these points, we address appellant's reasonable-and-detrimental-reliance claim.

Clark, that Branscomb was a "low level employee" and, therefore, was unlikely to have authority to promise that the District would repay over $67,000. Appellant argues that there is "no support in the record for the trial court's classification of Branscomb as a 'low level employee,'" but we disagree. It was enough that the record showed that Branscomb was supervised by Lang, and that Lang himself had a supervisor (Rogers).

Appellant also failed to demonstrate that she relied to her detriment on any promise by Branscomb. Appellant did not withdraw her request for an OAH hearing until three months after DCRA was to have performed its (putative) promise to repay the tax-lien amount; i.e., appellant already knew of the alleged breach when she (voluntarily) withdrew her hearing request. Even if we assume that appellant withdrew her OAH appeal because of the alleged promise, appellant suffered no detriment because, per *Stanford*, the appeal was subject to dismissal in any event. OAH lacked jurisdiction to issue any order disturbing the special tax assessment, and the NOV was moot (because the violation had been abated and no fines were assessed). The Superior Court has jurisdiction over tax-refund suits, but, long before the parties went to OAH mediation, the six-month (post-refund) period during which such a suit could be filed had expired. Thus, appellant had no claim that, in reliance on Branscomb's purported promise, she forwent bringing a

tax-refund suit she could otherwise have brought. As to appellant's claim that she forwent pursuing litigation against the District regarding its use of an unlicensed contractor, the quality of the contractor's work, and the District's failure to give appellant timely notice of the lien (thereby allowing "all statute[s] of limitations [to] expir[e]"), appellant has not identified the causes of action she would have brought. Nor has she shown that the applicable limitations period(s) (1) had not already expired by the date of mediation (April 12, 2011), but (2) had expired by the time (30 days after the mediation, i.e., on May 12, 2011) appellant learned that the District did not intend to honor the putative promise.[11] In short, appellant failed to show that she was rendered worse off than she had been prior to the promise allegedly made during mediation.[12]

---

[11] *Cf. Leekley v. District of Columbia Dep't of Emp't Servs*., 726 A.2d 678, 680 (D.C. 1999) (holding that Leekley could not avail herself of a claim of estoppel because "[h]er own testimony supports the . . . conclusion that [she] was unable to find a job rather than that the faulty advice of agency employees [upon which she relied] caused her continued unemployment").

[12] We also note that the District attached to its motion for summary judgment pages from the transcript of appellant's deposition, in which she testified that, other than communication with SunTrust, she did nothing else in reliance on the purported settlement agreement and did not "do anything with [her] money or [her] assets or anything in [her] life in reliance on [the putative] agreement that [she] would not have done if not for th[at] agreement."

The Superior Court did not err in granting summary judgment in favor of the District.  Wherefore, the judgment of the trial court is

*Affirmed.*