*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 22-TX-0762

KIRK BEATLEY, *et al.*, APPELLANTS,

V.

DISTRICT OF COLUMBIA, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2018-CVT-000035)

(Hon. Laura A. Cordero, Trial Judge)

(Submitted November 14, 2023        Decided January 11, 2024)

(As amended May 23, 2024)[*]

*Kevin E. Byrnes* was on the brief for appellants.

*Brian L. Schwalb*, Attorney General for the District of Columbia, *Caroline S. Van Zile*, Solicitor General, *Ashwin P. Phatak*, Principal Deputy Solicitor General, *Carl J. Schifferle*, Deputy Solicitor General, and *James C. McKay, Jr.*, Senior Assistant Attorney General, were on the brief for appellee.

Before HOWARD and SHANKER, *Associate Judges*, and THOMPSON, *Senior Judge.*

---

[*] This appeal was decided by an opinion issued on January 11, 2024. In response to arguments made in the District's petition for rehearing, this amended opinion expands the discussion on pages 3, 8, and 9 and adds new footnotes 7 and 11. We hereby grant the petition to that extent.

THOMPSON, *Senior Judge*: This matter is an appeal from the Superior Court Tax Division's dismissal of an action brought by homeowners/taxpayers/appellants Kirk Beatley and Lisa Holden in April 2018 challenging the validity of a (corrected) special assessment levied against their property in January 2016. The Tax Division dismissed the action as untimely filed under D.C. Code § 47-3303. We hold on the particular facts of this case that the action should not have been dismissed as untimely even though it was commenced considerably more than six months after the corrected special assessment was imposed. Accordingly, we reverse and remand for further proceedings.

## I.

The complaint in this matter alleges (or documents in the record show) the following: Initially, appellee District of Columbia (the "District") levied a special assessment (in the amount of $15,146.63) on appellants' property on January 2, 2015. The assessment amount purportedly was the cost incurred by the District in paying a contractor to perform emergency repairs to appellants' residence in December 2014 pursuant to D.C. Code § 42-3131.01.[1] Appellants contend that the contractor performed unnecessary repairs; that the contractor's invoice exaggerated

---

[1] According to the complaint, a District Department of Consumer and Regulatory Affairs ("DCRA") building inspector asserted that the residence was in "imminent danger of immediate collapse." Appellants assert that this declaration "was issued in bad faith[.]"

the charges for the work and that the assessment was "unsubstantiated and fraudulent;" that the assessment was levied fewer than four business days after completion of the work, such that appellants had no opportunity to contest the assessment; that the unnecessary repairs and appellants' efforts to resolve the situation caused them to place a temporary hold on renovations that had been underway at the residence; and that the temporary hold then led the District to improperly classify the residence as a vacant property for real property tax purposes and to levy a large increase in the real property tax on the residence "at the highest tax rate" for tax year 2017.

In response to appellants' inquiries and complaints, DCRA eventually produced the contractor's invoice and, on the evening of January 15, 2016—after telling appellants on January 10, 2016, that she would review the special assessment and receiving appellants' January 11, 2016, reply email in which they communicated that they "look[ed] forward to discussing" with DCRA the particular facts of their complaints about "fraud and corruption"—the DCRA Director notified appellants that it had imposed a corrected special assessment. Days before the Director sent appellants the January 15 notice, i.e., on January 12, 2016, the DCRA had filed a lien in the Office of the Recorder of Deeds on the basis of the corrected special assessment. The District's Office of Tax and Revenue ("OTR") subsequently required appellants to pay the corrected special

assessment amount as a condition of correcting an erroneous tax classification of appellants' property as a vacant or nuisance property. Appellants paid the corrected special assessment amount (totaling $17,047.88, including accrued interest and fees) in November 2017 and then brought an action in the Superior Court on April 13, 2018, seeking a refund of the amount they paid, recovery of their "costs in renovating the [p]roperty after the unnecessary and improper repairs," and a review of the contractor's invoice and a "refund for those charges that were illegally and improperly assessed[.]"

The Superior Court Tax Division, to which the case had been transferred, twice dismissed the homeowners' action. Initially, accepting an argument that had been advanced by the District, the court dismissed the action on the ground that appellants had failed to exhaust their administrative remedies and that the court therefore lacked jurisdiction over appellants' claim for a refund of the assessment amount. After appellants appealed to this court from that dismissal, the District changed its position, asserted that appellants had no available administrative remedy that they could have been required to exhaust, and asked this court to remand the case to the Superior Court for a decision on the merits. On remand from this court, the Superior Court Tax Division again dismissed, accepting the District's new argument that the Superior Court lacked subject matter jurisdiction because appellants had failed to bring their action within six months after the

assessment, as required by D.C. Code § 47-3303. The appeal presently before us seeks review of that dismissal order. Our review is de novo.[2]

**II.**

The special assessment in this case was imposed pursuant to D.C. Code § 42-3131.01. The District asserted in its motion for remand in the first appeal that the assessment was imposed pursuant to Section 42-3131.01(a)(1), which provides as follows:

> [W]henever the owner of any real property in the District of Columbia shall fail or refuse, after the service of reasonable notice in the manner provided in § 42-3131.03, to correct any condition which exists on or has arisen from such property in violation of law or of any regulation made by authority of law, with the correction of which condition said owner is by law or by said regulation chargeable, or to show cause, sufficient in the judgment of the Mayor of said District, why he should not be required to correct such condition, then, and in that instance, the Mayor of the District of Columbia is authorized to: Cause such condition to be corrected; assess the fair market value of the correction of the condition or the actual cost of the correction, whichever is higher, and all expenses incident thereto (including the cost of publication, if any, herein provided for) as a tax against the property on which such condition existed or from which such condition arose, as the case may be; and carry such tax on the regular tax rolls of the

---

[2] We review a dismissal for lack of subject matter jurisdiction de novo. *Heard v. Johnson*, 810 A.2d 871, 877 (D.C. 2002). Likewise, "[i]nterpretation of statutes presents a question of law that we consider *de novo.*" *Aziken v. District of Columbia*, 194 A.3d 31, 34 (D.C. 2018).

District, and collect such tax in the same manner as general taxes in said District are collected[.]

*Id.* The District's brief in this appeal, however, suggests—and it seems to us—that the special assessment in the instant case was (as appellants assert) imposed pursuant to D.C. Code § 42-3131.01(c)(1). Section 42-3131.01(c)(1) authorizes the Mayor "to take emergency action, including putting in temporary safeguards, without prior notification when the Mayor determines there is imminent danger due to an unsafe condition and immediate emergency action is necessary to alleviate the danger," *id.* § 42-3131.01(c)(1)(B); permits the Mayor to "assess all reasonable costs of correcting the condition . . . as a tax against the property," *id.* § 42-3131.01(c)(1)(D)(ii); and provides that "[a] tax placed against a property pursuant to this subsection shall be carried on the regular tax rolls and collected in the same manner as real estate taxes are collected." *id.* § 42-3131.01(c)(1)(D)(iii). Section 42-3131.01 does not define the term "collected," but our case law accepts that the tax collection process includes the process whereby proposed tax assessments are appealed before they are finalized.[3]

In the District of Columbia, real estate taxes are collected through a process whereby an assessment is announced; taxpayers have an opportunity to challenge

---

[3] *See D.C. Office of Tax & Revenue v. Sunbelt Beverage, LLC*, 64 A.3d 138, 148 n.23 (D.C. 2013) (referring to OTR's "collection" efforts, i.e., the process of recovering taxes, as including issuance of a proposed assessment, which the taxpayer may protest).

the assessment through a multi-level administrative review; and there is a final assessment only after exhaustion of such administrative-review remedies (or after the deadline for pursuing them has passed). *See* D.C. Code § 47-825.01a(d)(1) and (3), (e), and (g)(1) (providing for administrative review by OTR of a property's proposed assessed value or classification, appeal of the proposed assessed value or classification to the Real Property Tax Appeals Commission ("RPTAC") within forty-five days of the notice of the OTR determination, and appeals to the Superior Court by "an owner aggrieved by a proposed assessed value or classification," "provided, that the owner shall have in good faith first appealed the assessed value or classification to the Commission immediately preceding the appeal to the Superior Court" "in the same manner and to the same extent as provided in §[] 47-3303").[4]

Section 47-3303 provides that:

> Any person aggrieved by any assessment by the District of any personal property, inheritance, estate, business privilege, income and franchise, sales, alcoholic beverage, gross receipts, gross earnings, insurance premiums, or motor-vehicle fuel tax or taxes, or penalties

---

[4] *See also District of Columbia v. Willard Assocs*., 655 A.2d 1237, 1238 (D.C. 1995) ("The District of Columbia's real property tax law requires annual assessments of all real property in the District. The assessed value of the property is its estimated market value as of January 1 of the year preceding the tax year. *After allowing a period for taxpayers to challenge the assessments, the Mayor issues a final assessment roll* by June 30.") (italics added; citations omitted).

thereon, may within 6 months after the date of such
assessment appeal from the assessment to the Superior
Court of the District of Columbia; provided, that such
person shall first pay such tax together with penalties and
interest due thereon to the D.C. Treasurer. The mailing
to the taxpayer of a statement of taxes due shall be
considered notice of assessment with respect to the taxes.
. . .

*Id.* Section 47-3303 does not explain what date is to be treated as the "date of [the]

assessment."[5] As the above block quote shows, and as the District noted in its

petition for rehearing, the statute does provide that "[t]he mailing to the taxpayer of

a statement of taxes due shall be considered notice of assessment with respect to

the taxes." *Id.* However, that provision governs the date of notice to the taxpayer,

not the operative date of an assessment for purposes of an appeal to the Superior

Court. For purposes of determining when the within-six-months post-assessment

deadline for appeals to the Superior Court expires, it appears that our case law has

treated the assessment date *not* as the date when an assessment is first announced,

but as the date when the tax assessment is final after any administrative review has

occurred or been forgone. *See, e.g.*, *First Interstate Credit All., Inc. v. District of*

*Columbia*, 604 A.2d 10, 10-11 (D.C. 1992) (upholding the dismissal of a petition

---

[5] Our case law does reflect that the operative "assessment" for tax appeal purposes need not necessarily be called an "assessment." *See D.C. Office of Tax & Revenue v. Shuman*, 82 A.3d 58, 68 (D.C. 2013) (reasoning that a communication informing the taxpayer that money is owed can be an assessment).

filed in the Superior Court on March 2, 1988, pursuant to Section 47-3303, in a case where the personal property assessment was announced on April 8, 1987, and a final determination after the taxpayer's protest was made on September 2, 1987; the rationale for dismissal was *not* that more than six months had passed since April 8, 1987, but that the taxpayer did not pay the full amount of interest that had accrued on the assessment before filing the Superior Court action).

In the instant case, the District imposed a tax lien upon appellants' property immediately upon determining a corrected assessment amount and *before notifying appellants of the corrected assessment*. Appellants thus did not have resort to an administrative process to challenge the proposed assessment; rather, they were presented with a recorded lien.[6] In the District's words, "appellants could not have pursued an administrative remedy with RPTAC" because RPTAC "is not empowered to address tax liens assessed against real property." Nor, assuming

---

[6] *See* D.C. Code § 42-3131.01(c)(1)(D)(iv) ("The Mayor shall provide an opportunity for review of the summary corrective action without prejudice to the Mayor's authority to take and complete that action."). We recognize that DCRA, which reviewed appellants' complaints about the initial assessment before imposing the corrected assessment, afforded appellants at least that opportunity to review the initial assessment, but it did not afford them an opportunity to air their allegations about fraud and corruption or even to react to the corrected assessment before a lien was recorded in the corrected amount. We need not determine precisely what "opportunity for review" was required by Section 42-3131.01(c)(1)(D)(iv) to conclude that none was afforded with respect to the corrected assessment that the parties and the Superior Court have deemed to be the operative assessment in this case.

that the special assessment was collectible in the same manner as a general tax, *see* D.C. Code § 42-3131.01(a)(1), did appellants have resort to review by the Office of Administrative Hearings ("OAH") pursuant to D.C. Code § 47-4312, because OAH administrative law judges do not have the authority to review tax liens. *See D.C. Dep't of Consumer & Regul. Affs. v. Stanford*, 978 A.2d 196, 200 (D.C. 2009) (reversing the lien-removal order entered by a hearing officer of the Board of Appeals and Review, a predecessor of OAH).

We conclude based on a critical fact of this case—specifically, the District's immediate recordation of the corresponding tax lien before notifying appellants of the corrected special assessment—that appellants never were given a final administrative assessment that started the six-month clock under Section 47-3303. The conclusion to be drawn from the unavailability of an administrative-review process that would have culminated in a final assessment is *not* that appellants were required to seek any review in the Superior Court by a deadline that ran from the date when the (corrected) assessment was announced in January 2016. Rather, the proper conclusion is that the absence of an administrative review process (which would cause the special assessment to be collected in the same manner as real estate taxes are collected, *see* D.C. Code § 42-3131.01(c)(1)(D)(iii)) means that the six-month period for seeking Superior Court review did not begin to run and thus could not have expired so as to preclude appellants' lawsuit as time-

barred under Section 47-3303. *Cf. Tangoren v. Stephenson*, 977 A.2d 357, 361 (D.C. 2009) (holding that tax-sale purchasers' foreclosure actions, filed nearly three years after the tax sale, were not time-barred because "[u]nder the tax sale statute, unless and until OTR dates a tax sale certificate, the limited time in which the purchaser must file a foreclosure action [i.e., within one year from the date of the certificate of sale] does not begin to run").[7]

In its ruling, the Tax Division understandably sought to avoid an "indefinite[] exten[sion of] a litigant's opportunity to challenge the tax." We are not concerned with that here because it was an omission by the District—its failure to afford appellants an opportunity for review of the corrected assessment—that caused the limitations period not to begin running; and also because, according to the complaint, the District showed that it had a way to prompt the taxpayers' lawsuit: informing them that it would not correct their home's vacant-property tax

---

[7] The District is correct that appellants' principal argument in their briefs on appeal is that the special assessment was not a tax subject to Section 47-3303. However, because the meaning of the statutory language about special assessments being "collected in the same manner as real estate taxes are collected" was central to the case, it cannot fairly be said that the District was denied an opportunity to address the absence of an administrative review process, such as is available as part of the real estate tax collection process. Moreover, in asking this court to remand the case to the Superior Court after appellants' first appeal was filed, the District conceded that appellants had no available administrative remedy to challenge the propriety of the special assessment once the lien was recorded.

classification and related "skyrocketed" property tax rate until the special assessment was paid.[8]

In urging affirmance of the Superior Court's dismissal ruling, the District argues that this case is "squarely govern[ed]" by this court's decision in *Agbaraji v. Aldridge*, 836 A.2d 567 (D.C. 2003). Agbaraji, the owner of real property that was cited for housing code violations, was notified of the violations and given the opportunity either to correct them or to show cause why corrections were not required. *Id.* at 568. "Agbaraji did neither, thus entitling the District to correct the deficiencies itself and assess the cost of such corrections as a tax against the property" pursuant to D.C. Code § 42-3131.01(a). *Id.* After Agbaraji failed to reimburse the District, the District imposed a tax lien of $1,617 on the property to recover its costs. *Id.* Agbaraji then filed suit in the Superior Court seeking removal of the tax lien. *Id.* The Superior Court granted the District's motion to

---

[8] And, in any event, the taxpayers here filed suit just five months after paying the assessment amount. That at least was consistent with this court's statement (in dictum) in *Stanford*—seemingly tied to the rationale that there were "no . . . administrative remedies available to [Stanford]," 978 A.2d at 199 n.2—that "[t]he required procedure to challenge . . . a lien lodged against real property, is to pay the tax and within six months of payment, bring a refund suit against the District, or its agency, in the Tax Division of Superior Court." *Id.* at 199. As this court has previously observed, "[i]t is not uncommon for a tax statute to use the date of payment to mark the commencement of the filing period for a refund claim." *Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 755 (D.C. 1983) (en banc). The payment date is the date when, one might say, there is "left no doubt as to the computation of any taxes due." *Accenture Sub, Inc. v. District of Columbia*, 283 A.3d 130, 134 (D.C. 2022).

dismiss. *Id.* Citing D.C. Code § 47-3303, this court held that the Superior Court "properly declined to adjudicate the case as a tax appeal," "because more than six months had elapsed from the date of the assessment until the filing of suit." *Id.* at 569-70.

Notably, the opinion in *Agbaraji* does not identify the relevant dates (of the assessment or of any post-administrative-review final assessment), and further does not disclose whether Agbaraji had an opportunity to challenge the special assessment in the same manner as a "general tax" assessment might be challenged. D.C. Code § 42-3131.01(a)(1). It is noteworthy that in the cases *Agbaraji* cited to show that Section 47-3303 has been applied in cases involving real property, *see id.* at 569, the taxpayers were able to pursue administrative appeals (to the Board of Equalization and Review) before suing in Superior Court. *See District of Columbia v. W.T. Galliher & Brother, Inc.*, 656 A.2d 296, 297 (D.C. 1995), and *District of Columbia v. New York Life Ins. Co.*, 650 A.2d 671, 671 (D.C. 1994).

We are persuaded that the foregoing aspects of the *Agbaraji* opinion undermine the argument that it must govern the outcome of this case.[9]

---

[9] To arrive at the same point by a different route: For its analysis under Section 47-3303, *Agbaraji* relied on the reference in Section 42-3131.01(a)(1) to collection of a special assessment "in the same manner as general taxes . . . are collected." 836 A.2d at 568-69. By contrast, the relevant reference in the instant case is Section 42-3131.01(c)(1), which authorizes "[a] tax placed against a property pursuant to this subsection . . . [to be] collected in the same manner as real

Because we conclude that appellants' Superior Court action was not untimely filed, we remand the case to the Superior Court for further proceedings on the merits.[10] This result seems fair since it is precisely what the District sought when it asked this court for "reversal of the order of the Tax Division of the Superior Court dismissing this action for lack of jurisdiction" and a remand to that court "for disposition of the merits of appellants' claim." This result also is appropriate as it will give the Superior Court the opportunity to address appellants' non-tax-refund claims and to rule on appellants' motion to amend their

estate taxes are collected." D.C. Code § 42-3131.01(c)(1)(D)(iii). We assume this reference means something different from the reference in Section 42-3131.01(a)(1) to collecting special assessments in the same manner as general taxes are collected. *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 711 n.9 (2004) (noting the "usual rule that 'when the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended.'" (quoting 2A Norman J. Singer, *Sutherland Statutes and Statutory Construction* § 46:06, at 194 (6th rev. ed. 2000))); *accord Tangoren*, 977 A.2d at 360. We conclude that these different meanings are enough to require a conclusion that the holding in *Agbaraji*, in which the special assessment was based on Section 42-3131.01(a)(1), is not dispositive of the instant case, in which the special assessment was premised on Section 42-3131.01(c)(1).

[10] Our rationale does not implicate the Superior Court's subject matter jurisdiction; that is, we do not hold that the Superior Court may entertain appellants' lawsuit even though the complaint was not timely filed and even though the Superior Court therefore lacks jurisdiction under Section 47-3303. Rather, assuming without deciding that the time limit in Section 47-3303 is jurisdictional, we interpret the term "assessment" as used in Section 47-3303 in a manner that has led us to conclude that appellants' suit was timely filed.

complaint, which the Superior Court denied as moot in light of the court's dismissal order.[11]

## III.

For the foregoing reasons, the judgment of the Superior Court is reversed, and the matter is remanded for further proceedings.

*So ordered.*

---

[11] The District's petition for rehearing asserts that this opinion "throws into doubt the enforcement and administration of an important public safety statute." We do not discern how that would be so. Nothing in this opinion should be read as limiting the District's ability to undertake what the District terms "summary abatement of imminently dangerous building code violations" as authorized by Section 42-3131.01(c). Rather, the issue before us concerns only the property owners' opportunity for after-the-fact administrative or judicial review of that action. As the statute expressly provides, such opportunity for review is "without prejudice to the Mayor's authority to take and complete that [summary corrective] action." D.C. Code § 42-3131.01(c)(1)(D)(iv). Thus, we do not expect that the District will be chilled from carrying out its responsibilities under this public safety statute merely because we have concluded, on the specific facts of this case, that appellants' challenge to the reasonableness and reasonable cost of the abatement measures taken was not time-barred by the six-month limitations period.